# No. 21-56200

IN THE

U.S. COURT OF APPEALS

FOR THE NINTH CIRCUIT

_____

MITCH OBERSTEIN, ET AL.

*Plaintiffs-Appellants,*

v.

LIVE NATION ENTERTAINMENT, INC.

*Defendants-Appellees.*

_____

*On Appeal From The United States District Court*
*For The Central District of California*
*Hon. George H. Wu*

## OPENING BRIEF FOR PLAINTIFFS-APPELLANTS

Warren D. Postman
Albert Y. Pak
KELLER LENKNER LLC
1100 Vermont Ave., N.W.
12th Floor
Washington, D.C. 20005
(202) 918-1123

Sanford I. Weisburst
QUINN EMANUEL URQUHART
 & SULLIVAN, LLP
51 Madison Ave., 22nd Floor
New York, NY 10010
(212) 849-7000
sandyweisburst@quinnemanuel.com

Kevin Y. Teruya
Adam B. Wolfson
William R. Sears
 QUINN EMANUEL URQUHART
 & SULLIVAN, LLP
865 S. Figueroa St., 10th Floor
Los Angeles, CA 90017
(213) 443-3000

February 7, 2022

# **TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES..............................................................................iv

INTRODUCTION ...........................................................................................1

STATEMENT OF JURISDICTION.................................................................4

STATEMENT OF ISSUES PRESENTED .......................................................4

STATEMENT OF THE CASE ........................................................................5

      A.    Ticket Purchasers' Allegations That Ticketmaster LLC And
Live Nation Entertainment, Inc. Engaged In A Scheme To
Monopolize And To Restrain Competition .....................................5

      B.    Defendants' Terms Of Use, Including The Arbitration
Provision And Its Carve-Out .........................................................8

      C.    Discovery Concerning Whether Ticket Purchasers Had
Constructive Notice Of The Arbitration Provision In The Terms.....12

      D.    The Decision Below....................................................................13

SUMMARY OF ARGUMENT ......................................................................15

STANDARD OF REVIEW............................................................................18

ARGUMENT................................................................................................18

I.     THE TERMS DO NOT CREATE A VALID CONTRACT
BECAUSE THEY DO NOT IDENTIFY TICKETMASTER LLC OR
LIVE NATION ENTERTAINMENT, INC. AS PARTIES.....................18

II.    THE DISTRICT COURT SHOULD HAVE ALLOWED A JURY TO
RESOLVE WHETHER TICKET PURCHASERS HAD
CONSTRUCTIVE NOTICE OF THE TERMS...................................27

      A.    The Issue Of Constructive Notice Must Be Submitted To A
Jury When There Is A Material Dispute Of Fact............................28

B.     The District Court Erred In Ruling That There Is No Material Dispute Of Fact On Constructive Notice ...................................... 29

      1.     Selective Screenshots And Prior Decisions Addressing The Websites Do Not Compel A Finding Of Constructive Notice ................................................................................. 30

      2.     Ticket Purchasers Submitted Evidence From Which A Reasonable Jury Could Find That Ticket Purchasers Lacked Constructive Notice Of The Terms.......................... 36

      3.     Ticket Purchasers' Expert's Affidavit Underscores That There Is A Material Dispute Of Fact On Constructive Notice .............................................................................. 42

C.     At A Minimum, Constructive Notice Was Not Established As To Ms. Burke, Whose Claims Are Governed By Massachusetts Law ...................................................................................... 44

      1.     Massachusetts Law Imposes A Higher Standard for Constructive Notice Than California Law ........................... 45

      2.     Defendants' Use Of Clickwrap On Other Websites Weighs Against Finding Constructive Notice Under Massachusetts Law ........................................................... 50

      3.     The Contrast Between The Hyperlinks And The Surrounding Text Weighs Against Finding Constructive Notice Under Massachusetts Law ...................................... 50

III.     THE DISTRICT COURT ERRED IN RULING THAT THE PARTIES DELEGATED TO THE ARBITRATOR RATHER THAN THE COURT THE QUESTION WHETHER A CLAIM INVOLVES THE CONDITIONAL LICENSE....................................................... 52

CONCLUSION........................................................................... 54

REQUEST FOR ORAL ARGUMENT .......................................... 56

STATEMENT OF RELATED CASES............................................ 57

CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME ......................... 58

CERTIFICATE OF SERVICE ......................................................................59

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ajemian v. Yahoo!, Inc.*,
    83 Mass. App. Ct. 565 (2013) ............................................................48, 49

*Ajamian v. CantorCO2e, L.P.*,
    203 Cal. App. 4th 771 (Cal. App. 1st Dist. 2012)........................................53

*Archer & White Sales, Inc. v. Henry Schein, Inc.*,
    935 F.3d 274 (5th Cir. 2019), *cert dismissed*, 141 S. Ct. 656 (2021)...............54

*Archer v. GrubHub, Inc.*,
    No. 1984CV03277BLS1, 2021 WL 832132 (Mass. Super. Jan. 13, 2021).......47

*AT&T Techs., Inc. v. Commc'ns Workers*,
    475 U.S. 643 (1986) .................................................................................53

*Bekele v. Lyft, Inc.*,
    918 F.3d 181 (1st Cir. 2019).....................................................................49

*Bouarich v. Comerica Mgmt. Co.*,
    No. B302958, 2021 WL 1782995
    (Cal. App. 2d Dist. May 5, 2021)........................................14, 20, 21, 25, 26

*Chong v. Northeastern Univ.*,
    No. 20-cv-10844-RGS, 2021 WL 1857341 (D. Mass. May 10, 2021)........47, 51

*Colgate v. JUUL Labs, Inc.*,
    402 F. Supp. 3d 728 (N.D. Cal. 2019) ..................................................36, 39

*Complete Entm't Res. LLC v. Live Nation Entm't, Inc.*,
    No. 15-cv-9814-DSF-AGRx, 2017 WL 6512223 (C.D. Cal. Oct. 16, 2017) ......8

*Crawford v. Beachbody, LLC*,
    No. 14-cv-1583-GPC-KSC, 2014 WL 6606563 (S.D. Cal. Nov. 5, 2014)........41

*Dickey v. Ticketmaster LLC*,
    No. 18-cv-9052-GW-GJSx, 2019 WL 9096443 (C.D. Cal. Mar. 12, 2019)......30

*Dohrmann v. Intuit, Inc.*,
   823 F. App'x 482 (9th Cir. 2020) ............................................................ 42

*Eiss v. USAA Fed. Savings Bank*,
   404 F. Supp. 3d 1240 (N.D. Cal. 2019) ..................................................... 19

*Emmanuel v. Handy Techs., Inc.*,
   992 F.3d 1 (1st Cir. 2021) .......................................................................... 47

*Emp'rs Ins. of Wausau v. Granite St. Ins. Co.*,
   330 F.3d 1214 (9th Cir. 2003) ................................................................... 21

*First Options of Chicago, Inc. v. Kaplan*,
   514 U.S. 938 (1995) ......................................................................... 19, 53

*Flores v. Nature's Best Distrib., LLC*,
   7 Cal. App. 5th 1 (Cal. App. 4th Dist. 2016) ......................... 14, 20, 21, 25, 26

*Fteja v. Facebook, Inc.*,
   841 F. Supp. 2d 829 (S.D.N.Y. 2012) ....................................................... 41

*Fuentes v. TMCSF, Inc.*,
   26 Cal. App. 5th 541 549 (Cal. App. 4th Dist. 2018) ................................... 22

*Hansen v. LMB Mortg. Servs., Inc.*,
   1 F.4th 667 (9th Cir. 2021) ....................................................................... 29

*Himber v. Live Nation Worldwide, Inc.*,
   No. 16-cv-5001-JS-GRB, 2018 WL 2304770 (E.D.N.Y. May 21, 2018) ......... 30

*Immediato v. Postmates, Inc.*,
   No. 20-cv-12308-RGS, 2021 WL 828381 (D. Mass. Mar. 4, 2021) ............... 47

*Jackson v. Grant*,
   890 F.2d 118 (9th Cir. 1989) ............................................................... 19, 20

*James & Jackson, LLC v. Willie Gary, LLC*,
   906 A.2d 76 (Del. 2006) ........................................................................... 54

*Johnmohammadi v. Bloomingdale's, Inc.*,
   755 F.3d 1072 (9th Cir. 2014) ..................................................................... 4

*Kauders v. Uber Techs., Inc.*,
   159 N.E.3d 1033 (Mass. 2021)................................... 46, 47, 48, 49, 50, 51, 52

*Kramer v. Toyota Motor Corp.*,
   705 F.3d 1122 (9th Cir. 2013)....................................................................26

*Laumann v. Nat'l Hockey League*,
   989 F. Supp. 2d 329 (S.D.N.Y. 2013) .......................................................27

*Lee v. Intelius Inc.*,
   737 F.3d 1254 (9th Cir. 2013)....................................................................26

*Lee v. Postmates Inc.*,
   No. 18-cv-03421-JCS, 2018 WL 4961802 (N.D. Cal. Oct. 15, 2018)..............45

*Lee v. Ticketmaster L.L.C.*,
   817 F. App'x 393 (9th Cir. 2020) ..............................................................30

*Mahmoudiani v. Bartlett Care Ctr., LLC*,
   No. G055851, 2019 WL 1450424 (Cal. App. 3d Dist. Apr. 2, 2019)..............26

*McKee v. Audible, Inc.*,
   No. 17-cv-1941-GW-EX, 2017 WL 4685039 (C.D. Cal. July 17, 2017)..........26

*Metter v. Uber Techs., Inc.*,
   No. 16-cv-06652-RS, 2017 WL 1374579 (N.D. Cal. Apr. 17, 2017)..............44

*MISR Ins. Co. v. M/V HAR SINAI*,
   480 F. Supp. 398 (S.D.N.Y. 1979)............................................................25

*Mundi v. Union Sec. Life Ins. Co.*,
   555 F.3d 1042 (9th Cir. 2009)....................................................................26

*MZM Constr. Co. v. New Jersey Bldg. Laborers Statewide Benefit Funds*,
   974 F.3d 386 (3d Cir. 2020)...............................................................18, 19

*NASDAQ OMX Grp., Inc. v. UBS Secs. Inc.*,
   770 F.3d 1010 (2d Cir. 2014)....................................................................54

*Nevarez v. Forty Niners Football Co., LLC*,
   No. 16-cv-07013, 2017 WL 3492110 (N.D. Cal. Aug. 15, 2017) ..................30

*Nguyen v. Barnes & Noble Inc.*,
  763 F.3d 1171 (9th Cir. 2014) .................................................. 19, 28, 39, 42

*Nicosia v. Amazon.com, Inc.*,
  834 F.3d 220 (2d Cir. 2016) .................................................................. 39, 41

*Norcia v. Samsung Telecommc'ns Am., LLC*,
  845 F.3d 1279 (9th Cir. 2017) ..................................................................... 35

*O'Connor v. R.F. Lafferty & Co.*,
  965 F.2d 893 (10th Cir. 1992) ..................................................................... 23

*Okereke v. Uber Techs., Inc.*,
  No. 16-cv-12487-PBS, 2017 WL 6336080 (D. Mass. June 13, 2017) ............ 49

*Oracle Am., Inc. v. Myriad Grp. A.G.*,
  724 F.3d 1069 (9th Cir. 2013) ................................................... 4, 18, 53, 54

*Pittard v. Orange Cty. Homecare*,
  No. 08-cv-1398-DMS-WMC, 2009 WL 10672900
  (S.D. Cal. Apr. 25, 2009) ............................................................................ 25

*Pryor v. Eastern Bank*,
  No. 1984CV03467BLS1, 2021 WL 3612495
  (Mass. Sup. Ct. Mar. 3, 2021) .................................................................... 51

*Regan v. Pinger, Inc.*,
  No. 20-cv-02221-LHK, 2021 WL 706465 (N.D. Cal. Feb. 23, 2021).............. 45

*Rent-a-Center, West, Inc. v. Jackson*,
  561 U.S. 63 (2010) ..................................................................................... 53

*S. Pac. Co. v. City & County of San Francisco*,
  62 Cal. 2d 50 (Cal. 1964) .......................................................................... 29

*Safley v. BMW of N. Am., LLC*,
  No. 20-cv-00366-BAS-MDD, 2021 WL 409722 (S.D. Cal. Feb. 5, 2021).......22

*Sakkab v. Luxottica Retail N. Am., Inc.*,
  803 F.3d 425 (9th Cir. 2015) ...................................................................... 18

*Schmidt v. Samsung Elecs. Am., Inc.*,
  No. 16-cv-1725-JCC, 2017 WL 2289035 (W.D. Wash. May 25, 2017)...........22

vii

*Sonner v. Premier Nutrition Corp.*,
  971 F.3d 834 (9th Cir. 2020)....................................................................31

*Specht v. Netscape Commc'ns Corp.*,
  306 F.3d 17 (2d Cir. 2002) ......................................................................48

*Three Valleys Mun. Water Dist. v. E.F. Hutton & Co.*,
  925 F.2d 1136 (9th Cir. 1991)..................................................................29

*In re Uber Text Messaging*,
  No. 18-cv-02931-HSG, 2019 WL 2509337 (N.D. Cal. June 18, 2019)............44

*Vapor Recovery Sys. Co.*,
  311 F.2d 782 (9th Cir. 1962)....................................................................44

*Wash. v. Cal. City Corr. Ctr.*,
  871 F. Supp. 2d 1010 (E.D. Cal. 2012).....................................................21

*Weckesser v. Knight Enters. S.E., LLC*,
  735 F. App'x 816 (4th Cir. 2018) .............................................................25

*West v. Uber Techs.*,
  No. 18-cv-3001-PSG-GJS, 2018 WL 5848903
  (C.D. Cal. Sept. 5, 2018) ...................................................................45, 46

*Westlye v. Look Sports, Inc.*,
  17 Cal. App. 4th 1715, 1727 (1993).........................................................26

*In re Wholesale Grocery Prods. Antitrust Litig.*,
  707 F.3d 917 (8th Cir. 2013)....................................................................27

*Wilson v. Huuuge, Inc.*,
  944 F.3d 1212 (9th Cir. 2019).............................................................28, 39

**Statutes**

9 U.S.C. § 4 ............................................................................................29

15 U.S.C. § 1.............................................................................................4

28 U.S.C. § 1291 .......................................................................................4

28 U.S.C. § 1331 .......................................................................................4

Cal. Civ. Code § 1558 ....................................................................................19

**Rules and Regulations**

Fed. R. Civ. P. 30(b)(6) ..................................................................... 13, 38, 42

**Other Authorities**

Press Release 19-1424, Department of Justice, Justice Department Will Move to
    Significantly Modify and Extend Consent Decree with Live Nation/Ticketmaster
    (Dec. 19, 2019), https://www.justice.gov/opa/pr/justice-department-will-move-
    significantly-modify-and-extend-consent-decree-live .....................................1

## **INTRODUCTION**

In 2019, the U.S. Department of Justice, addressing conduct by Live Nation Entertainment, Inc. and Ticketmaster LLC that is substantially similar to these entities' alleged conduct in the instant case, found:

> The 2010 Final Judgment permitted Live Nation to merge with Ticketmaster but prohibited the company from retaliating against concert venues for using another ticketing company, threatening concert venues, or undertaking other specified actions against concert venues for ten years. Despite the prohibitions in the Final Judgment, Live Nation repeatedly and over the course of several years engaged in conduct that, in the Department's view, violated the Final Judgment. To put a stop to this conduct and to remove any doubt about defendants' obligations under the Final Judgment going forward, the Department and Live Nation have agreed to modify the Final Judgment to make clear that such conduct is prohibited.[1]

These measures are welcome going forward, but they do not redress the injuries suffered by customers who earlier paid supra-competitive fees to buy tickets on ticketmaster.com or livenation.com, or by those who continue to suffer injuries from Defendants-Appellees Ticketmaster LLC's and Live Nation Entertainment Inc.'s other anticompetitive acts.

Plaintiffs-Appellants Mitch Oberstein, Sophie Burke, and Gary Matty (together, "Ticket Purchasers") represent a proposed class of such purchasers. The district court (C.D. Cal.; Hon. George H. Wu) dismissed their case, ruling that it

---

[1] Press Release 19-1424, Department of Justice, Justice Department Will Move to Significantly Modify and Extend Consent Decree with Live Nation/Ticketmaster (Dec. 19, 2019), https://www.justice.gov/opa/pr/justice-department-will-move-significantly-modify-and-extend-consent-decree-live.

must be arbitrated pursuant to Terms of Use ("Terms") on ticketmaster.com and livenation.com.[2] The court erred in three independent ways.

*First*, the Terms do not meet California law's requirement that a contract specifically identify the parties thereto. The Terms do not mention "Ticketmaster LLC" at all, describe "Live Nation Entertainment, Inc." only as a recipient of notices and questions (not as a party), and lack catch-all language applying the Terms to any subsidiary or affiliate of the ticket-selling entity. The district court did not address California decisions that have held similar contracts invalid.

*Second*, Defendants did not establish that Ticket Purchasers had actual or constructive notice of the arbitration provision in the Terms, as needed to satisfy the separate contract-formation prerequisite of mutual assent. In holding to the contrary, the district court disregarded or improperly discounted Ticket Purchasers' evidence, including that Defendants or their affiliates designed the websites so that the Terms would not distract customers from "cart conversion" (*i.e.*, consummating purchases of tickets in their virtual shopping carts), 5-ER-686-88, 5-ER-698, 5-ER-704, and that Defendants or their affiliates changed the websites

---

[2] Since Ticket Purchasers initiated this appeal, a new case has been filed against Defendants with substantively identical causes of action, but with new allegations (based on Defendants' revised Terms) that any alleged arbitration agreement is unenforceable. *See Heckman v. Live Nation Entm't Inc.*, No. 2:22-cv-00047-GW-GJS (C.D. Cal.). The revised Terms were not addressed by the district court in the instant case, and the new case does not bear on the instant appeal.

while this case was pending to require customers to check a box specifically indicating they agree to the Terms, 2-ER-195. This evidence gave rise to a material factual dispute that a jury should have been allowed to resolve. At a minimum, the court should not have dismissed Ms. Burke's claims governed by Massachusetts law, which is more stringent than California law concerning constructive notice.

*Third*, the Terms contain a provision carving out from arbitration claims involving the "conditional license." Through the conditional license, Ticketmaster LLC and Live Nation Worldwide, Inc. (not Live Nation Entertainment, Inc.) grant customers permission to use the ticketmaster.com and livenation.com websites to buy tickets without violating copyrights, subject to the conditions that hinder the customers from reselling their tickets on secondary ticketing platforms that compete with Ticketmaster LLC's own secondary ticket platform. Ticket Purchasers allege that these conditions harm competition as a central part of Defendants' broader anticompetitive scheme. As to arbitration, the Terms state: "If a claim involves the conditional license granted to you … *either of us may file a lawsuit in a federal or state court* located within Los Angeles County, California." 1-ER-15-16 (emphasis added). Ticket Purchasers' claims are thus carved out from arbitration. The district court avoided that conclusion by holding that whether Ticket Purchasers' claims "involv[e] the conditional license" is for the arbitrator,

3

not the court, to decide. Although a panel of this Court agreed with that view in *Oracle Am., Inc. v. Myriad Grp. A.G.*, 724 F.3d 1069, 1075-76 (9th Cir. 2013), other courts of appeals have disagreed. Ticket Purchasers respectfully preserve their argument for possible review by this Court *en banc* or by the U.S. Supreme Court.

## STATEMENT OF JURISDICTION

The district court had subject matter jurisdiction under 28 U.S.C. § 1331 because Ticket Purchasers' complaint asserted claims under the Sherman Act, 15 U.S.C. § 1. This Court has jurisdiction under 28 U.S.C. § 1291 because the district court dismissed the case on September 30, 2021. 1-ER-2. *See Johnmohammadi v. Bloomingdale's, Inc.*, 755 F.3d 1072, 1073-74 (9th Cir. 2014). Ticket Purchasers timely filed their notice of appeal on October 29, 2021. 5-ER-918.

## STATEMENT OF ISSUES PRESENTED

1. Whether the Terms do not create a valid arbitration agreement because they fail specifically to identify Ticketmaster LLC or Live Nation Entertainment, Inc. as parties, as they must under California law.

2. Whether a reasonable jury could find that Ticket Purchasers lacked constructive notice of the arbitration provision in the Terms, and whether the district court therefore erred in ruling as a matter of law that constructive notice was established.

4

a. Whether the district court erred in holding that screenshots of excerpts from the websites by themselves, and in the face of contrary evidence, establish that Ticket Purchasers had constructive notice of the arbitration provision under California law.

b. Whether, at a minimum, the district court erred in dismissing Ms. Burke's claims governed by Massachusetts law, which is more stringent than California law on constructive notice.

3. Whether a provision carving claims out from arbitration makes it ambiguous—and thus not "clear and unmistakable"—that the parties intended to delegate to an arbitrator (rather than a court) the question whether a claim is within the carve-out and thus not subject to arbitration.

## STATEMENT OF THE CASE

**A.    Ticket Purchasers' Allegations That Ticketmaster LLC And Live Nation Entertainment, Inc. Engaged In A Scheme To Monopolize And To Restrain Competition**

This lawsuit challenges an anticompetitive scheme by Defendants Ticketmaster LLC and Live Nation Entertainment, Inc. to overcharge customers fees for purchasing concert tickets.

As alleged in the Amended Complaint, Defendants operate the largest live entertainment conglomerate in the United States.  5-ER-862.  Ticketmaster LLC

has monopoly power in both the market for primary (*i.e.*, initial purchase) and the market for secondary (*i.e.*, resale) ticketing services for major concert venues, and it uses this power to suppress competition and to prevent competitors from entering the relevant markets and lowering costs for consumers. 5-ER-850-59. Ticketmaster LLC acquired this monopoly power by purchasing nascent competitors, driving them out of business through anticompetitive tactics, or otherwise minimizing their market shares through long-term exclusive dealing agreements with concert venues. 5-ER-850-53.

Meanwhile, Live Nation Entertainment, Inc., Ticketmaster LLC's parent company, helps to protect Ticketmaster LLC's monopoly power in ticket sales by threatening to withhold concerts from venues unless they use Ticketmaster LLC as their ticketing agent. 5-ER-866-72. Live Nation Entertainment, Inc. has leverage to make this threat because, as the world's dominant concert promotion company, it pays exorbitant amounts to music performers to lock them up under its banner and thus controls concert venues' access to the top shows. 5-ER-832-35.

The Amended Complaint details numerous examples of Defendants' anticompetitive conduct. For example, in 2012, the President of a Live Nation Entertainment, Inc. affiliate repeatedly threatened to withhold concerts from a venue unless the venue used Ticketmaster LLC as its ticketing agent. 5-ER-869. After the venue refused to use Ticketmaster LLC, Defendants retaliated by

6

withholding business from the venue: Live Nation-branded shows at the venue dropped by 50%. *Id.* Similarly, Ticketmaster LLC's president threatened to go "nuclear" on another venue if it did not use Ticketmaster LLC to sell concert tickets; when the venue still refused, it was placed on a "black list" and lost access to Live Nation-branded concerts. 5-ER-871-72.

According to the Amended Complaint, Defendants also maintain their monopoly position in the primary and secondary ticketing markets through anticompetitive restrictions imposed on customers who use the ticketmaster.com or livenation.com websites to buy tickets. Most ticket purchasers buy concert tickets through these websites, and the websites purport to be governed by "Terms of Use" or "Terms." 5-ER-832. The Terms include a "conditional license" that allows purchasers to use the websites without infringing Defendants' copyrights, but restricts purchasers from engaging in activities that would facilitate the resale of concert tickets on rival secondary market platforms that compete with Ticketmaster LLC. 5-ER-874-75. For example, the Terms effectively prevent a purchaser from buying tickets quickly or in bulk, purchases that would facilitate resale on secondary market platforms that compete with Defendants. *Id.*

The same conduct giving rise to Ticket Purchasers' claims has already led the U.S. Department of Justice to find that Defendants violated a final judgment, as described in the Introduction above. The conduct has also been the subject of prior

lawsuits brought by Defendants' competitors. *See, e.g.*, *Complete Entm't Res. LLC v. Live Nation Entm't, Inc.*, 15-cv-9814-DSF-AGRx, 2017 WL 6512223, *3 (C.D. Cal. Oct. 16, 2017) (denying Defendants' motion for summary judgment regarding their exclusive dealing with concert venues). But Defendants have not yet been held liable to ticket purchasers.

### B. Defendants' Terms Of Use, Including The Arbitration Provision And Its Carve-Out

The websites from which Ticket Purchasers bought tickets, ticketmaster.com and livenation.com, contain nearly identical Terms. *Compare* 5-ER-808-14, *with* 5-ER-816-29. Ticketmaster LLC operates, and sells tickets through, ticketmaster.com, although the name "Ticketmaster LLC" does not appear on the website (including the Terms on the website). *E.g.*, 5-ER-770-73, 5-ER-808-14. Live Nation *Worldwide*, Inc.—a Live Nation Entertainment, Inc. subsidiary— operates, and sells tickets through, livenation.com. 3-ER-351, 3-ER-367-69, 5-ER-802-06. Live Nation Entertainment, Inc. does not sell tickets, and manages its own separate website, livenationentertainment.com. 3-ER-367-69, 4-ER-585-87.[3]

The versions of the ticketmaster.com and livenation.com websites at issue in this case included a textual notice in small gray font that mentions the Terms, adjacent to a blue (but not underlined) hyperlink to the Terms. *E.g.*, 5-ER-742, 5-

---

[3] Live Nation Entertainment, Inc. has more than 500 subsidiaries, approximately 80 of which have "Live Nation" in their names and approximately 30 of which have "Ticketmaster" in their names. 2-ER-346-59.

ER-786. The websites indicated that, by proceeding further on the website, the user "agree[s]" to the Terms. *Id.* Unlike other websites, ticketmaster.com and livenation.com do not require that the user actually view the Terms and check a box on the same page as the Terms indicating the user's agreement to the Terms.

An example from ticketmaster.com is shown below:



2-ER-101.

By contrast, Apple displays actual terms to users and requires user to check a box on the same page indicating that the user agrees to them:



2-ER-90.

Returning to ticketmaster.com and livenation.com, even if a user clicks on the hyperlink and views the Terms, the Terms do not identify the legal name of any party to the contract allegedly created by the Terms. More specifically, as relevant to the Defendants here, the Terms do not mention "Ticketmaster LLC" at all. And they mention "Live Nation Entertainment, Inc." only as a recipient of notices and questions, not as a party. 5-ER-812-13. The Terms generally refer to the ticket-selling party to the alleged agreement with the words "Live Nation" (not followed by "Entertainment, Inc."), "Ticketmaster" (not followed by "LLC"), "We," or "Us." 5-ER-808, 5-ER-812.

The Terms contain a provision requiring that certain disputes be resolved via arbitration: "ANY DISPUTE OR CLAIM RELATING IN ANY WAY TO YOUR USE OF THE SITE, OR TO PRODUCTS OR SERVICES SOLD, DISTRIBUTED, ISSUED, OR SERVICED BY US OR THROUGH US, WILL BE RESOLVED BY BINDING, INDIVIDUAL ARBITRATION, RATHER THAN IN COURT." 5-ER-812 (capitalization in original).

The Terms also have a carve-out provision exempting certain claims from arbitration: "If a claim involves the conditional license granted to you … either of us may file a lawsuit in a federal or state court … and we both consent to the jurisdiction of those courts." 5-ER-812, 5-ER-826. As discussed above, the conditional license is granted to Ticket Purchasers, allowing them to use the websites without infringing copyrights on those websites, subject to conditions that the Amended Complaint alleges make it difficult for Ticket Purchasers to resell tickets on competing secondary market platforms.

Finally, the Terms assign certain arbitrability questions to the arbitrator:

> This arbitration agreement is intended to be broadly interpreted and will survive termination of these Terms. The arbitrator, and not any federal, state or local court or agency, shall have exclusive authority to the extent permitted by law to resolve all disputes arising out of or relating to the interpretation, applicability, enforceability, or formation of this Agreement, including, but not limited to, any claim that all or any part of this Agreement is void or voidable.

5-ER-812.

11

### C. Discovery Concerning Whether Ticket Purchasers Had Constructive Notice Of The Arbitration Provision In The Terms

After Ticket Purchasers filed their original complaint, Defendants moved to dismiss or to stay the case in deference to arbitration. 5-ER-917. In response, Ticket Purchasers sought discovery regarding whether a valid arbitration agreement existed. Ticket Purchasers requested, among other things, Defendants' or their affiliates' user-interface and user-experience design documents, which are documents showing how Defendants or their affiliates designed and implemented the Terms and the hyperlinks that take users to the Terms. 5-ER-914. Defendants refused to provide such documents, and Ticket Purchasers moved to compel production. *E.g.*, 5-ER-910, 5-ER-912, 5-ER-914.

Ultimately, the district court granted the motion to compel in part, 5-ER-904, and Defendants produced documents regarding the website design processes. The documents show, among other things, that Defendants' employees understood their design choices made it so that customers were not "focused on the message"—*i.e.*, the Terms—because Defendants or their affiliates were instead seeking to maximize "cart conversion" (*i.e.*, sales). 5-ER-686-68, 5-ER-698, 5-ER-703-04. They also show that, *after* Ticket Purchasers filed their original complaint, the Terms were revised to require customers to click a button explicitly agreeing to the Terms (as compared to the old version of the website depicted above, which merely provided a non-Terms-specific clicking option to proceed to

12

the next page of the website and said, "By continuing to the next page, you agree to the Terms …."). 5-ER-680, 5-ER-685, 5-ER-687. The documents further demonstrate that Defendants recognized that this change would make the Terms conspicuous to users. *Id.*

Defendants also produced a Federal Rule of Civil Procedure 30(b)(6) witness: Kimberly Tobias, an in-house lawyer for Live Nation Entertainment, Inc. Ms. Tobias testified at deposition regarding Defendants' design choices. Ms. Tobias admitted that the Terms were updated for a reason, which supports the inference that Defendants understood their prior design choices were not conspicuous to consumers. 4-ER-594-605, 4-ER-607-09. Ms. Tobias refused to disclose the reason, asserting that it was privileged. 4-ER-609.

## D. The Decision Below

Following discovery and the filing of Ticket Purchasers' Amended Complaint, Defendants filed an amended motion to stay or to dismiss the case as subject to arbitration. 5-ER-712. Ticket Purchasers opposed the motion on several grounds, including: (1) the Terms failed to identify Ticketmaster LLC or Live Nation Entertainment, Inc. as parties; (2) Ticket Purchasers lacked constructive notice of the Terms under California law, and at a minimum Ms. Burke lacked constructive notice of the Terms under Massachusetts' more stringent standard; and (3) Ticket Purchasers' claims are not subject to arbitration because they are

within an express carve-out from arbitration for claims involving the conditional license. 1-ER-9-17. The district court issued an opinion granting Defendants' motion. 1-ER-4.

*First*, the district court found that Terms identify Ticketmaster LLC as a party, even though the Terms do not mention "Ticketmaster LLC" in any capacity, and do not contain catch-all language applying the Terms to all subsidiaries and/or affiliates. 1-ER-9-10. And the court found that the Terms identify Live Nation Entertainment, Inc. as a party even though the Terms mention that entity only as a recipient of notices and questions. *Id.* The court did not discuss key cases cited by Ticket Purchasers that hold that failure to identify parties by their legal entity names or a catch-all description prevents a valid contract from being formed. *See, e.g.*, *Flores v. Nature's Best Distrib.*, *LLC*, 7 Cal. App. 5th 1, 9 (Cal. App. 4th Dist. 2016); *Bouarich v. Comerica Mgmt. Co.*, No. B302958, 2021 WL 1782995, at *6 (Cal. App. 2d Dist. May 5, 2021).

*Second*, regarding constructive notice, the district court recognized that a genuine factual dispute would warrant submitting the issue to the factfinder, but the court ruled that there was no such dispute here and that constructive notice was established as a matter of law. 1-ER-14-15. The court based this ruling on screenshots of excerpts of Defendants' websites. *Id.* The court did not address other contrary evidence, including the context surrounding those excerpts,

Defendants' admissions that other website design choices would have made the Terms more conspicuous, and an affidavit submitted by Ticket Purchasers' expert explaining that Defendants' design choices employ "dark patterns" to make the Terms largely unnoticeable and to render the import of the link identifying them not understandable by a reasonable customer. *Id.*

*Third*, regarding the provision carving out from arbitration claims involving the conditional license, the district court held that the issue whether the claims involve the conditional license is for the arbitrator rather than the court to decide. 1-ER-16-17.

Based on its opinion, the district court ordered dismissal of the Amended Complaint. 1-ER-2-3. This appeal followed.

## SUMMARY OF ARGUMENT

The district court erred in three ways, each of which independently warrants vacatur of the dismissal order.

## I

The Terms do not sufficiently identify Ticketmaster LLC or Live Nation Entertainment, Inc. as parties, and the district court erred in ruling to the contrary. Courts applying California law hold that a contract must identify a party by its legal name, and that general references to "company" or "us," or a common name

like "Ticketmaster" (without the "LLC"), are inadequate. The district court did not discuss this case law in ruling that the Terms identify Ticketmaster LLC.

Live Nation Entertainment, Inc., unlike Ticketmaster LLC, is at least mentioned in the Terms. But the mention is a narrow one, designating Live Nation Entertainment, Inc. as the recipient of notices and questions, not as a party. The district court did not acknowledge precedent that makes this distinction. But even if this reference to Live Nation Entertainment, Inc. differentiates that entity from Ticketmaster LLC, this Court should at minimum vacate the district court's dismissal as to Ticketmaster LLC.

## II

The district court erroneously ruled as a matter of law that Ticket Purchasers had constructive notice of the Terms, disregarding evidence to the contrary that created a genuine and material dispute. The court focused solely on Defendants' self-curated excerpts of their websites, discounting contrary evidence such as the broader context surrounding those excerpts, Defendants' admissions that a different website design would have made the Terms conspicuous, and an expert affidavit explaining why ticketmaster.com's and livenation.com's design prevents reasonable customers from seeing or understanding the import of links to the Terms. Because material factual disputes existed regarding whether consumers

had constructive notice of the Terms, the district court should have submitted the question to a jury rather than resolving the issue as a matter of law.

But even if the district court was correct to resolve the constructive-notice issue as a matter of law in Defendants' favor under the California standard, Massachusetts law (applicable to Ms. Burke's claims) is more stringent than California law as to what must be shown to establish constructive notice. The district court erroneously equated California law with Massachusetts law even though other courts have recognized the distinction. The Massachusetts standard was not satisfied here, or at least a reasonable jury could so find, because Massachusetts law takes a skeptical view of "browsewrap" terms like the Terms on ticketmaster.com and livenation.com (which merely provide a hyperlink to the terms and leave to chance whether the website user will actually review them), in contrast to "clickwrap" terms employed by many other websites (which require the user to open a page containing the terms and to click a box indicating assent on that same page).

### III

The district court erroneously ruled that disputes regarding the scope of the conditional license carve-out were delegated to the arbitrator. Under Supreme Court precedent, such issues of arbitrability are for the court (not the arbitrator) to decide, unless the parties clearly and unmistakably convey their intent to assign

them to the arbitrator. The parties did not do so here, because the Terms' provision delegating certain arbitrability questions to the arbitrator is in tension with the Terms' provision carving out from arbitration claims involving the conditional license. Although a panel of this Court rejected a similar argument in *Oracle*, other federal courts of appeals and state courts of last resort have accepted it, and Ticket Purchasers therefore respectfully preserve the argument for possible *en banc* review by this Court or review by the U.S. Supreme Court.

## <u>STANDARD OF REVIEW</u>

This Court reviews *de novo* a district court's dismissal of a case based on an allegedly enforceable arbitration agreement. *E.g.*, *Sakkab v. Luxottica Retail N. Am., Inc.*, 803 F.3d 425, 429 (9th Cir. 2015).

## <u>ARGUMENT</u>

## I. THE TERMS DO NOT CREATE A VALID CONTRACT BECAUSE THEY DO NOT IDENTIFY TICKETMASTER LLC OR LIVE NATION ENTERTAINMENT, INC. AS PARTIES

The Terms nowhere mention "Ticketmaster LLC," and they refer to "Live Nation Entertainment, Inc." only as the recipient of notices and questions, not as a party to a contract. As to both Defendants, but at least as to Ticketmaster LLC, this falls short of one of California law's prerequisites to a valid contract—that the contract specifically identify the parties.

Whether there is a valid contract is decided by the court, not the arbitrator. *See, e.g.*, *MZM Constr. Co. v. New Jersey Bldg. Laborers Statewide Benefit Funds*,

974 F.3d 386, 401 (3d Cir. 2020) ("[C]ourts retain the primary power to decide questions of whether the parties mutually assented to a contract containing or incorporating a delegation provision."); *Eiss v. USAA Fed. Savings Bank*, 404 F. Supp. 3d 1240, 1248 (N.D. Cal. 2019) ("The issue of contract formation … is not a delegable gateway issue.").[4]

"In determining whether a valid arbitration agreement exists, federal courts apply ordinary state law principles that govern the formation of contracts." *Nguyen v. Barnes & Noble Inc.*, 763 F.3d 1171, 1175 (9th Cir. 2014) (quotations omitted). Here, the parties and district court addressed this issue under California law.[5] Under California law, "[i]t is essential to the validity of a contract, not only that the parties should exist, but that it should be possible to identify them." Cal. Civ. Code § 1558; *see also, e.g.*, *Jackson v. Grant*, 890 F.2d 118, 121 (9th Cir.

---

[4] *If* there is a valid contract, then it is possible for that contract to delegate issues of arbitrability to the arbitrator so long as the parties "clearly and unmistakably" express their intent to do so. *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995). Points I and II argue, for independent reasons, that there is no valid contract here. Point III contends that, assuming *arguendo* there is a valid contract, the parties did not clearly and unmistakably assign to the arbitrator (rather than the court) the question whether a claim involves the conditional license and therefore is carved out from arbitration.

[5] *E.g.*, 1-ER-8. By contrast, on Point II (whether Ticket Purchasers had constructive notice of the Terms), Ticket Purchasers argued below, and argue on this appeal, that Massachusetts law imposes a more stringent standard than California law for a party to establish that its adversary had constructive notice of an arbitration provision, and that Massachusetts law applies to Plaintiff Burke's claims because she is a Massachusetts resident.

1989) (paraphrasing Section 1558 and holding that "[t]he lender is unidentifiable and therefore no valid loan contract existed"). Where it is not possible from an alleged contract's terms to identify which legal entity is a party, the court must find the contract invalid as a matter of law. *Flores*, 7 Cal. App. 5th at 9.

Numerous California decisions have applied the identification rule in circumstances similar to those here. In *Flores*, for example, the California appellate court held invalid an agreement that did "not identify with which entity or entities plaintiff had agreed to" arbitration, and instead merely said it was between a plaintiff-employee and the "Company" that employed her. *Id.* The court so held even though the agreement used the common name "Nature's Best," *id.* at 4, and plaintiff knew that her employer was at least one of the four entities she sued, *id.* at 3 n.1 ("The complaint alleged all claims against all four of the defendants, who are collectively referred to as 'Defendants' or 'Nature's Best,' and does not specifically allege which entity or entities served as plaintiff's employer.").

Relying on *Flores*, another California appellate court held invalid an agreement that was "silent as to the counterparty or counterparties with whom [plaintiff] agreed to arbitrate disputes" because it did not clarify whether it was against "Comerica alone," "Comerica's affiliates," or "Comerica's executives." *Bouarich*, 2021 WL 1782995, *6. The *Bouarich* court so held even though a

document accompanying the arbitration agreement identified the plaintiff's employer as "Comerica Management Company, Inc.," *id.* at *1, and the "Comerica logo" appeared on other documents accompanying the arbitration agreement, *id.*[6]

Applying *Flores* and *Bouarich* here, Defendants' Terms do not adequately identify Ticketmaster LLC or Live Nation Entertainment, Inc. as a party. The Terms do not identify any particular ticket-selling entity as a party; instead, they refer vaguely to "us," "we," and "our." *E.g.*, 5-ER-809-13, 5-ER-816-27 ("ANY DISPUTE OR CLAIM RELATING IN ANY WAY TO YOUR USE OF THE SITE, OR TO PRODUCTS OR SERVICES SOLD, DISTRIBUTED, ISSUED, OR SERVICED BY *US* OR THROUGH *US*, WILL BE RESOLVED BY BINDING, INDIVIDUAL ARBITRATION . . .") (capitalization in original; emphasis added). And the Terms' use of the common names "Ticketmaster" (not followed by "LLC") and "Live Nation" (not followed by "Entertainment, Inc.") in the Terms, 5-ER-809-13, 5-ER-816-27, are indistinguishable from the references in *Flores* and *Bouarich* to the common names "Nature's Best" and "Comerica," without further specificity concerning the legal name of the party to the arbitration

---

[6] While *Bouarich* is unpublished, federal courts "may consider unpublished state decisions, even though such opinions have no precedential value." *Emp'rs Ins. of Wausau v. Granite St. Ins. Co.*, 330 F.3d 1214, 1220 n.8 (9th Cir. 2003); *see also Wash. v. Cal. City Corr. Ctr.*, 871 F. Supp. 2d 1010, 1028 n.3 (E.D. Cal. 2012) ("The Court may cite unpublished California appellate decisions as persuasive authority.").

agreement, or at least an explicit "catch-all" reference to "all parents, subsidiaries, and affiliates."[7]

Identifying the parties to the arbitration agreement is not difficult. Several of Defendants' competitors do so in their contracts. *See, e.g.*, *Stubhub Marketplace Global User Agreement*, https://www.stubhub.com/legal/?section=ua ("[Y]ou are contracting with StubHub, Inc. (including its affiliate Last Minute Transactions, Inc.")); *SeatGeek Terms of Use,* https://seatgeek.com/terms ("SeatGeek, Inc."); *Eventbrite Terms of Service,* https://www.eventbrite.com/support/articles/en_US/Troubleshooting/eventbrite-terms-of-service?lg=en_US ("'Eventbrite,' 'we,' 'us,' or 'our,' … refers to Eventbrite, Inc. and its affiliates, and subsidiaries"); *Google Terms of Service*, https://policies.google.com/terms?hl=en-US ("[Y]ou're contracting with Google LLC"); *see also* 2-ER-33-34 (Ticket Purchasers' brief below, citing these examples). Indeed, Defendants' own affiliates do so on at least one other website

---

[7]    While some courts allow a contract to identify numerous entities through a catch-all provision, *see, e.g.*, *Fuentes v. TMCSF, Inc.*, 26 Cal. App. 5th 541, 549 (4th Dist. 2018) ("any of ESB's successors, assigns, parents, subsidiaries, or affiliates and/or any employees"); *Schmidt v. Samsung Elecs. Am., Inc*., No. 16-cv-1725-JCC, 2017 WL 2289035, at *7 (W.D. Wash. May 25, 2017) ("SEA's 'affiliates'"), the Terms here contain no such provision. *Cf. Safley v. BMW of N. Am., LLC*, No. 20-cv-00366-BAS-MDD, 2021 WL 409722, at *5 (S.D. Cal. Feb. 5, 2021) ("[W]ithout broader language like 'parents' or 'affiliates' in the arbitration clause, Defendant's argument that it 'falls within the class of persons (i.e., assigns) whom the Arbitration Provision was intended to benefit' is unpersuasive.").

from which Ticket Purchasers here did *not* buy their tickets: www.ticketmaster.co.uk explicitly states that its terms of use are between the customer and "Ticketmaster *Corporation*, Ticketmaster *UK Ltd.* and their respective affiliates and subsidiaries." 4-ER-661 (emphasis added). But on the websites from which Ticket Purchasers bought their tickets, the Terms referred only to "Ticketmaster" without the "LLC."

To be sure, "Live Nation Entertainment, Inc."—unlike "Ticketmaster LLC"—is mentioned in the Terms, a fact the district court emphasized in finding a valid contract. 1-ER-10. But that mention does not suffice because it refers to Live Nation Entertainment, Inc. only as a recipient of questions and similar notices, not as a party. 5-ER-813 ("If you have any questions, comments, or complaints regarding these Terms or the Site, please contact us at … Live Nation Entertainment, Inc. …"). Parent companies often serve ministerial roles for their subsidiaries without the parent becoming a party to the contract. *See O'Connor v. R.F. Lafferty & Co.*, 965 F.2d 893, 902 (10th Cir. 1992) (stamp on contract stating "[t]hrough the Courtesy of R.F. Lafferty & Co." did not make R.F. Lafferty & Co. a third-party beneficiary of contract).

Additional confirmation that Live Nation Entertainment, Inc. is merely a recipient of notices and questions (and not a party) is provided by the fact that a different entity—Live Nation Worldwide, Inc.—owns the livenation.com domain

name and operates the website, 3-ER-367-69, 3-ER-374, 5-ER-806 (copyright reference on that website to "Live Nation Worldwide, Inc."), and thus is presumably the ticket-selling party. The Terms convey that only one ticket-buying party (the customer) and one ticket-selling entity are parties. *See* 5-ER-812 ("If a claim involves the conditional license granted to you … *either of us* may file a lawsuit in a federal or state court … and we *both* consent to the jurisdiction of those courts.") (emphasis added); *Either*, MERRIAM-WEBSTER ONLINE DICTIONARY (2021) ("the one and the other of two"); *Both*, OXFORD ENGLISH DICTIONARY (12th ed. 2020) ("refer[s] to two people or things, regarded and identified together"). Thus, the ticket-selling entity cannot be both Live Nation Worldwide, Inc. and Live Nation Entertainment, Inc. The most plausible inference is that the former is the party, and the latter is merely a ministerial agent that receives notices and questions. At the very least, there is inherent ambiguity concerning which entity is the ticket-selling party to the Terms. The district court did not address this point.

But even if the district court was correct to hold that Terms' explicit but narrow mention of "Live Nation Entertainment, Inc." sufficed to identify it as a party, the Terms contain no such reference to "Ticketmaster LLC," and therefore the district court's own logic does not sweep in Ticketmaster LLC.

Rather than grapple with the Terms' failure to identify Ticketmaster LLC, the district court reasoned that "contracts do not need to repeatedly recite the full

corporate entity name in order to bind parties." 1-ER-10. But Ticket Purchasers argued (consistent with California law) only that the legal entity must be identified *once*, not "repeatedly." Here, the Terms do not identify Ticketmaster LLC even once, and do not include catch-all language regarding subsidiaries or affiliates that might otherwise encompass Ticketmaster LLC.

As noted above, the district court did not specifically discuss the California appellate decisions in *Flores* and *Bouarich*. Instead, the district court asserted that "Plaintiffs' submitted cases generally do not come close to the situation they allege, where common names were used instead of the full corporate entity name in a TOU [Terms Of Use]." *Id.* Respectfully, this assertion is inaccurate as to *Flores* and *Bouarich*. Both decisions held references to "common names" (Nature's Best and Comerica, respectively) insufficient. And those decisions are hardly outliers; numerous others hold similarly. *See, e.g.*, *Weckesser v. Knight Enters. S.E., LLC*, 735 F. App'x 816, 820 (4th Cir. 2018) (agreement referencing "Jeffry Knight, Inc." did not cover claims against "Knight Enterprises S.E., LLC"); *Pittard v. Orange Cty. Homecare*, No. 08-cv-1398-DMS-WMC, 2009 WL 10672900, at *2 (S.D. Cal. Apr. 25, 2009) (agreement referencing "trade name" did not adequately identify contracting party); *MISR Ins. Co. v. M/V HAR SINAI*, 480 F. Supp. 398, 404-05 (S.D.N.Y. 1979) (agreement referencing "Gencon" charter insufficient to establish enforceable arbitration agreement where there were

multiple "Gencon" charters); *see also Mahmoudiani v. Bartlett Care Ctr., LLC*, No. G055851, 2019 WL 1450424, at *2 (Cal. App. 3d Dist. Apr. 2, 2019) (arbitration agreement referencing "Facility" insufficient as a matter of law, even though defendant argued the identity of the contracting entities was otherwise "clear" from context).

The district court did discuss cases where the contract failed even to mention the common name of the entity seeking to compel arbitration, and the courts held that the contract was therefore invalid. 1-ER-10 (citing *Lee v. Intelius Inc.*, 737 F.3d 1254, 1260 (9th Cir. 2013); *McKee v. Audible, Inc*., No. 17-cv-1941-GW-EX 2017, WL 4685039, at *11 (C.D. Cal. July 17, 2017); *Westlye v. Look Sports, Inc*., 17 Cal. App. 4th 1715, 1727 (1993)). But those decisions did not hold that mentioning the common name would have been sufficient. Again, *Flores* and *Bouarich* hold that it is not.[8]

---

[8] The district court correctly did not accept Defendants' argument that, even if they are not parties to the Terms, they can enforce them under the doctrine of equitable estoppel, which "precludes a party from claiming the benefits of a contract while simultaneously attempting to avoid the burdens that contract imposes." *Kramer v. Toyota Motor Corp.*, 705 F.3d 1122, 1128 (9th Cir. 2013) (quotations omitted). That doctrine applies only where the claims against the nonparty who seeks to enforce an arbitration agreement are inextricably intertwined with the agreement in which the arbitration clause appears. *E.g.*, *Mundi v. Union Sec. Life Ins. Co.*, 555 F.3d 1042, 1045-46 (9th Cir. 2009). That is not the case here. Ticket Purchasers' claims arise from Defendants' violation of the antitrust laws and thus exist independent of the Terms. *Id.* at 1047 (claim not intertwined with agreement because it did not "arise out of or relate to" the agreement, and resolution of the claim "d[id] not require the examination of any

## II. THE DISTRICT COURT SHOULD HAVE ALLOWED A JURY TO RESOLVE WHETHER TICKET PURCHASERS HAD CONSTRUCTIVE NOTICE OF THE TERMS

If this Court agrees with Point I above, then the Terms did not create a valid contract and this Court should vacate and remand. But if this Court disagrees with Point I, this Court should address another prerequisite to formation of a valid contract, namely that the party sought to be bound assented to the contract, which in turn requires a showing that the party had actual or constructive notice of the contract's terms.

The district court disregarded most of Ticket Purchasers' evidence on constructive notice and thus erroneously resolved the issue as a matter of law instead of submitting it to a jury. In particular, the court focused on Defendants' self-curated screenshots of the websites, declining to consider those screenshots in context or to discuss evidence including Defendants' admissions that the websites' design did not "focus" customers on the Terms because Defendants or their affiliates were instead seeking to maximize "cart conversion" (*i.e.*, sales).

---

provisions of the [a]greement" (citation omitted)); *In re Wholesale Grocery Prods. Antitrust Litig.*, 707 F.3d 917, 923 (8th Cir. 2013) (equitable estoppel inapplicable where plaintiffs bought "antitrust conspiracy claims against the non-signator[ies]"); *Laumann v. Nat'l Hockey League*, 989 F. Supp. 2d 329, 340 (S.D.N.Y. 2013) (similar).

**A.    The Issue Of Constructive Notice Must Be Submitted To A Jury When There Is A Material Dispute Of Fact**

"Contracts formed on the Internet come primarily in two flavors: 'clickwrap' (or 'click-through') agreements, in which website users are required to click on an 'I agree' box after being presented with a list of terms and conditions of use; and 'browsewrap' agreements, where a website's terms and conditions of use are generally posted on the website via a hyperlink at the bottom of the screen." *Nguyen*, 763 F.3d at 1175-76.    A clickwrap approach supports a finding that website users had actual notice of the Terms, but a browsewrap approach does not, and instead raises the issue whether users had constructive notice of the terms.  *See Wilson v. Huuuge, Inc.*, 944 F.3d 1212, 1219 (9th Cir. 2019) ("[T]he existence of mutual assent turns on whether the consumer had reasonable notice of the terms of service agreement."); *Nguyen*, 763 F.3d at 1177 ("Whether a user has inquiry notice of a browsewrap agreement, in turn, depends on the design and content of the website and the agreement's webpage.").  The less conspicuous the arbitration agreement on the website, the less likely constructive notice can be established. *Wilson*, 944 F.3d at 1221 ("Instead of requiring a user to affirmatively assent, [defendant] chose to gamble on whether its users would have notice of its Terms. The odds are not in its favor.").

"The district court, when considering a motion to compel arbitration which is opposed on the ground that no agreement to arbitrate had been made between the

parties, should give to the opposing party [here, Ticket Purchasers] the benefit of all reasonable doubts and inferences that may arise." *Three Valleys Mun. Water Dist. v. E.F. Hutton & Co.*, 925 F.2d 1136, 1141 (9th Cir. 1991) (quotations omitted). "[O]nce a district court concludes that there are genuine disputes of material fact as to whether the parties formed an arbitration agreement, the court must proceed without delay to a trial on arbitrability." *Hansen v. LMB Mortg. Servs., Inc.*, 1 F.4th 667, 671 (9th Cir. 2021); *see also* 9 U.S.C. § 4 (trial is by jury where so demanded); *S. Pac. Co. v. City & Cnty. of San Francisco*, 62 Cal. 2d 50, 56-57 (Cal. 1964) ("Whenever particular proven circumstances are such that reasonable men could differ as to whether a prudent man would have been put 'upon inquiry' by knowledge of them, the resultant question is one of fact to be determined by the fact-finding body.").

Here, as we show next, the district court erroneously deprived Ticket Purchasers of their right to a jury trial by discounting or ignoring Ticket Purchasers' evidence and instead crediting Defendants' own acontextual screenshots of the websites.

## B. The District Court Erred In Ruling That There Is No Material Dispute Of Fact On Constructive Notice

Despite having authorized Ticket Purchasers to pursue discovery regarding the design and presentation of the Terms on the websites, the district court

discounted most of the evidence that discovery yielded, as well as the affidavit of Ticket Purchasers' expert.

### 1. Selective Screenshots And Prior Decisions Addressing The Websites Do Not Compel A Finding Of Constructive Notice

The district court made clear that it considered Ticket Purchasers' evidence and their expert's affidavit immaterial because, according to the court, constructive notice must be found based on certain screenshots of the websites and prior decisions ruling that the Terms are enforceable. *See* 1-ER-15 ("While the Court agrees that Plaintiffs must receive the benefit of all reasonable inferences, the Court found the expert declaration and Plaintiffs other evidence ultimately immaterial because the Court's review and analysis of the screenshots of the websites themselves (and the decisions of other courts) outweighed considerations brought to the Court's attention by Dr. Andre and the concomitant evidence."). The district court was wrong on both counts.

*First*, prior decisions addressing the websites—*Lee v. Ticketmaster L.L.C.*, 817 F. App'x 393, 394-95 (9th Cir. 2020); *Dickey v. Ticketmaster LLC*, No. 18-cv-9052-GW-GJSx, 2019 WL 9096443, at *7 (C.D. Cal. Mar. 12, 2019); *Nevarez v. Forty Niners Football Co., LLC*, No. 16-cv-07013, 2017 WL 3492110, at *8 (N.D. Cal. Aug. 15, 2017); and *Himber v. Live Nation Worldwide, Inc.*, No. 16-cv-5001-JS-GRB, 2018 WL 2304770, at *4 (E.D.N.Y. May 21, 2018) (cited at 1-ER-9, 1-ER-14)—are not controlling for a simple reason: none considered the factual and

expert evidence put forward by Ticket Purchasers here. *See, e.g.*, *Sonner v. Premier Nutrition Corp.*, 971 F.3d 834, 842 n.5 (9th Cir. 2020) (citations omitted) ("Questions which merely lurk in the record, neither brought to the attention of the court nor ruled upon, are not to be considered as having been so decided as to constitute precedents.") (citation and quotation omitted). The *Lee* panel, for example, did not have before it evidence that the text surrounding the hyperlink to the Terms was in a deliberately lighter (and hence less legible) type, a document in which Ticketmaster admitted that its website did not "focu[s]" the customer on the Terms because Ticketmaster's goal was "cart conversion" (*i.e.*, sales), or the fact that Defendants or their affiliates changed the websites' design during the pendency of their motion (and after the *Lee* decision) to make the Terms more conspicuous. This case does, as we discuss in Point II.B.2 below.[9]

*Second*, concerning the screenshots, the broader context reveals that the Terms are significantly less conspicuous than they appear in the screenshots. The district court relied on the following screenshot:

---

[9] Those decisions likewise did not consider the argument in Point I above. In any event, none of the prior decisions is binding. *Lee* is a nonprecedential decision of this Court, and *Dickey*, *Nevarez*, and *Himber* are district court decisions.



1-ER-7. But this screenshot was created by scrolling down the page on ticketmaster.com, such that the first item to be filled in is "Postal Code," not the customer's name or credit card number.

A customer's original view (before scrolling down) makes the Terms much less conspicuous:



5-ER-754-55.  The district court's excerpt, unlike this original view, removes such

features as Lady Gaga's picture on the right-hand side and the customer's name

and credit card information on the left-hand side—features that distract the customer from the page's reference to the Terms, which in the original view appears only at the far bottom right-hand side.

The district court's other screenshot suffers from similar flaws:



1-ER-7. Again, placing this excerpt within the broader context that is actually viewed by a customer makes the reference to the Terms less conspicuous because the customer is distracted by the description of the performer and the venue at the top, and the countdown clock at the top right corner setting a deadline by which the purchase must be made:



2-ER-111.

Even if the district court was correct to rely on excerpted screenshots rather than the more contextual views reproduced above, the court erred in assuming that those screenshots appeared on ticketmaster.com and livenation.com throughout the entire class period. Defendants' witness Ms. Tobias testified that the websites' displays may have changed from time to time during the class period, 4-ER-537-39, 4-ER-590, but her declaration provided only a single screenshot of each relevant webpage at a single point in time, 5-ER-717-38, which the district court reproduced in its opinion.[10]

Once the screenshots are put in their proper context, they do not establish constructive notice as a matter of law, and the district court should have considered

---

[10]    It was Defendants' burden to prove constructive notice. *Norcia v. Samsung Telecommc'ns Am., LLC*, 845 F.3d 1279, 1283 (9th Cir. 2017).

other evidence to decide whether a material dispute of fact exists that should have been put to a jury. *See, e.g.*, *Colgate v. JUUL Labs, Inc.*, 402 F. Supp. 3d 728, 764-66 (N.D. Cal. 2019) (constructive notice not established even though hyperlink to terms was near sign-up button). We turn now to that other evidence.

### 2. Ticket Purchasers Submitted Evidence From Which A Reasonable Jury Could Find That Ticket Purchasers Lacked Constructive Notice Of The Terms

***The change from browsewrap to clickwrap after this case was filed.***
Before this lawsuit was filed, ticketmaster.com and livenation.com used browsewrap. Other companies, by contrast, were using clickwrap during that time period, and indeed another website affiliated with Defendants (www.ticketexchangebyticketmaster.com) was doing so prior to April 7, 2016, requiring consumers to affirmatively check a box stating, "You must confirm that you have read and agree to the Terms & Conditions to place your order." 5-ER-673, 5-ER-678, 4-ER-521-32.

The difference between the browsewrap interface on ticketmaster.com and livenation.com, on the one hand, and clickwrap interfaces, on the other hand, is significant, as illustrated below by comparing a clickwrap example (myamerigas.com) with ticketmaster.com's use of browsewrap:





After the filing of this lawsuit, Defendants or their affiliates chose to implement clickwrap on the purchase screen of ticketmaster.com and livenation.com:



2-ER-195 (annotations omitted); *see also* 4-ER-477, 5-ER-680-83, 5-ER-685. This updated interface is similar to myamerigas.com because it requires customers to check a box confirming they have "read and agree[d] to the current Terms." 2-ER-195. Defendants' documents, which reflect discussions by their "user experience" designers, reveal that Defendants or their affiliates concluded they should implement clickwrap so "*the fan will be focused on the message*," *i.e.*, the Terms. 5-ER-687-88 (emphasis added). As discussed above, Defendants' Rule 30(b)(6) witness admitted that the Terms were updated for a reason, which she refused to disclose and asserted was privileged and therefore influenced by their legal concerns. 4-ER-609.

That the websites could have used clickwrap, but did not do so, is strong evidence that customers lacked constructive notice, as multiple courts examining

this issue have concluded. *Wilson*, 944 F.3d at 1221; *Nicosia v. Amazon.com, Inc*., 834 F.3d 220, 237-38 (2d Cir. 2016). The district court did not address these cases or the websites' change from browsewrap to clickwrap.

*Lack of underlining of hyperlinks.* The hyperlinks to the Terms were not underlined. *E.g.*, 2-ER-106, 5-ER-717-38, 5-ER-741-68. This is important because hyperlinks are commonly blue and underlined and recognized by reasonably prudent customers when visible in that customary manner. *E.g.*, *Colgate*, 402 F. Supp. 3d at 766. Again, the district court did not address this evidence.

*Relative inconspicuousness of hyperlinks.* Other text and items on the websites were more conspicuous (*e.g.*, photographs, text in larger or darker fonts, or text in all capital letters) than the hyperlinked words "Terms of Use" and the surrounding text describing their import. 2-ER-106-09, 5-ER-716-38, 5-ER-741-68. Even focusing on the hyperlinks and their immediately surrounding text, the question is whether both are conspicuous, not just the hyperlink alone. This is because the surrounding text explains the significance of the hyperlinked Terms. *See Nguyen*, 763 F.3d at 1178 ("[T]he proximity or conspicuousness of the hyperlink alone is not enough to give rise to constructive notice."); *see also Nicosia*, 834 F.3d at 237 ("The message itself … is not bold, capitalized, or conspicuous in light of the whole webpage.").

As the district court acknowledged, the website designers deliberately designed the text surrounding the hyperlinks to have 35% less opacity and lower contrast than the hyperlinks and other text on the same page, making them less visible to users. 2-ER-102-06, 2-ER-181-197. The contrast between the hyperlinks (100% opacity) and the text surrounding them (65% opacity) is shown below:



2-ER-182.

Documents reveal that the website designers believed that this design choice affected how consumers would perceive the text. A set of "Ticketmaster" design

principles recommended use of 100% opacity for "primary" text and 65% opacity for "secondary" text.  5-ER-692.  This shows that the designers thought the decision to use 65% opacity for the textual notice (as opposed to 100% opacity for the hyperlink) mattered and rendered it "secondary" to consumers and therefore less prominent than other text on the page.  2-ER-106.

Defendants' documents further reveal that Defendants believed these types of design decisions advanced their business goals, such as "cart conversion" (more actual purchases of tickets in customers' virtual shopping carts).  4-ER-458, 5-ER-698, 5-ER-704.  The advancement of those goals is contrary to the goal of making sure that customers understand and assent to the Terms.  *Nicosia*, 834 F.3d at 237 ("In a seeming effort to streamline customer purchases, Amazon chose not to employ a clickwrap mechanism.").

***Absence of language requiring customer to "read" the Terms.***  The textual notices asked only whether the customer agrees to the Terms, not whether she has *read* the Terms, 5-ER-741-68, 5-ER-774-800, unlike on other companies' websites, *see, e.g.*, *Crawford v. Beachbody, LLC*, No. 14-cv-1583-GPC-KSC, 2014 WL 6606563, at *3 (S.D. Cal. Nov. 5, 2014) ("you have read and understand"); *Fteja v. Facebook, Inc.*, 841 F. Supp. 2d 829, 835 (S.D.N.Y. 2012) ("you have read and agree").  And Ms. Tobias testified that the websites added "you have read the

Terms" for a reason (albeit a privileged reason) in 2020. 4-ER-545-47, 4-ER-556-58.

### 3. Ticket Purchasers' Expert's Affidavit Underscores That There Is A Material Dispute Of Fact On Constructive Notice

The above shortcomings in ticketmaster.com and livenation.com were confirmed by the analysis of Ticket Purchasers' expert witness Dr. Anthony Andre, who specializes in human factors, usability testing, user experience research, and ergonomics. 2-ER-73-74. Defendants neither challenged Dr. Andre's qualifications nor proffered a rebuttal expert, and Defendants' Rule 30(b)(6) witness Ms. Tobias confirmed that Defendants performed no studies or analyses of any kind regarding whether users notice the Terms, the textual notice, and/or the hyperlink. 4-ER-403-07, 4-ER-417-20.[11]

*First*, Dr. Andre explained that users are goal-oriented; they scan sites to find information and functions that satisfy their goals. 2-ER-79-80. They are heavily influenced by user-interface design choices. 2-ER-80-82. This is the relevant perspective for evaluating the conspicuousness of the Terms. *E.g.*, *Nguyen*, 763 F.3d at 1177, 1179. As Dr. Andre explained, this perspective weighs

---

[11] In *Dohrmann v. Intuit, Inc.*, 823 F. App'x 482, 484 n.3 (9th Cir. 2020), this Court did not consider the expert analysis submitted by the appellee because there was no evidence giving rise to a factual dispute. Here, as explained in text above, there is conflicting evidence, and Dr. Andre's opinion should therefore have been considered.

against finding that the notices were reasonably conspicuous, in light of the many defects in the designs of the Terms and their hyperlinks discussed above.

*Second*, Dr. Andre analyzed each of the relevant screens on ticketmaster.com and livenation.com and found the Terms, including the textual notice, the hyperlink, and the arbitration provision within the Terms, were not conspicuous. They did not conform with user-interface design principles (as used elsewhere on other websites) to render them more noticeable. 2-ER-97-121. Dr. Andre explained that this is a cumulative analysis, meaning that each design flaw renders the Terms less conspicuous. 2-ER-109, 2-ER-115.

The district court found that, contrary to Dr. Andre's opacity analysis, "the added opacity sometimes serves to highlight the blue links as the added opacity turns the surrounding text more gray than black, creating more contrast and visibility for the blue links that navigate to the [Terms] and generally drawing attention to the language pointing to the [Terms]." 1-ER-15.[12] But as Dr. Andre explained, the contrast between blue hyperlinks and gray surrounding text made it *less* likely consumers would see or read that surrounding text—and thus less likely they would understand the import of the hyperlinks and assenting to the Terms. As discussed above, the question is whether both the surrounding text and the

---

[12] The facts and data supporting Dr. Andre's opacity analysis are described in Point II.B.2 above.

hyperlinks are conspicuous, not just the hyperlinks. Whether the contrast between the blue hyperlinks and the gray text surrounding the hyperlinks made it less likely that consumers would see or read that text and understand the import of the hyperlinks and assenting to the Terms is a factual dispute that should have been left to a jury. *See, e.g.*, *Nat'l Lab. Rels. Bd. v. Vapor Recovery Sys. Co.*, 311 F.2d 782, 787 (9th Cir. 1962) (Constructive notice is "an ordinary question of fact, fully dependent upon the then surrounding circumstances."); *Metter v. Uber Techs., Inc.*, No. 16-cv-06652-RS, 2017 WL 1374579, at *4 (N.D. Cal. Apr. 17, 2017) (denying arbitration where evidence precluded finding assent as a matter of law); *In re Uber Text Messaging*, No. 18-cv-02931-HSG, 2019 WL 2509337, at *7-8 (N.D. Cal. June 18, 2019) (same). In other words, a jury should have been allowed to resolve whether the defects noted by Dr. Andre were mere suggestions for how to improve already-sufficiently conspicuous Terms or, on the other hand, showed that the Terms are insufficiently conspicuous to support a finding of constructive notice.

## C. At A Minimum, Constructive Notice Was Not Established As To Ms. Burke, Whose Claims Are Governed By Massachusetts Law

If this Court agrees that there is a material dispute whether Ticket Purchasers lacked constructive notice of the Terms under California law, there is no need to analyze whether Massachusetts law and California law differ with respect to constructive notice. But even if this Court agrees that Ticket Purchasers had

44

constructive notice under California law, the district court erred by holding that Ms. Burke had constructive notice under Massachusetts law.

The district court acknowledged that Ms. Burke's claims were governed by Massachusetts law. 1-ER-11. But the court erred in holding that Massachusetts law does not materially differ from California law, and that the Terms are reasonably conspicuous under Massachusetts law.

### 1. Massachusetts Law Imposes A Higher Standard for Constructive Notice Than California Law

Federal district courts in California have recognized that Massachusetts law imposes a higher standard than California law on website operators seeking to establish that consumers had constructive notice of the website's terms of use. *See Lee v. Postmates Inc.*, No. 18-cv-03421-JCS, 2018 WL 4961802, at *4 (N.D. Cal. Oct. 15, 2018) (finding assent under California law and distinguishing *Cullinane* [*v. Uber Techs., Inc.*, 893 F.3d 53 (1st Cir. 2018)] as based on Massachusetts law); *see also Regan v. Pinger, Inc.*, No. 20-cv-02221-LHK, 2021 WL 706465, at *7 (N.D. Cal. Feb. 23, 2021) (describing *Cullinane* as an "inapposite decision[] that courts within the Ninth Circuit have not followed"); *West v. Uber Techs.*, No. 18-cv-3001-PSG-GJS, 2018 WL 5848903, at *4 (C.D. Cal. Sept. 5, 2018) ("[T]he *Cullinane* decision departs dramatically … from the overall legal landscape regarding assent to online agreements.").

Indeed, the district court below conceded that "Plaintiffs' most persuasive arguments for a difference in Massachusetts law are their citations to recent California [federal] district court decisions that found that the *Cullinane* decision departs from Ninth Circuit reasoning." 1-ER-12. But the court erroneously suggested "that the differences in results *could* reflect the fact-intensive nature of the inquiry," 1-ER-13 (emphasis added), because the court declined to acknowledge that, in cases involving the *same defendant and customers*, the higher standard imposed by Massachusetts law has led to a different result from the outcome under most other states' laws. *Compare Kauders v. Uber Techs., Inc.*, 159 N.E.3d 1033, 1055 (Mass. 2021) (applying Massachusetts law and finding constructive notice not established), *and Cullinane*, 893 F.3d at 62-64 (same), *with West*, 2018 WL 5848903, at *4 (applying Illinois law and finding constructive notice established).

Massachusetts law is not just more stringent than California law in the abstract, but in how it applies to websites like ticketmaster.com and livenation.com that do not employ clickwrap. Under Massachusetts law as interpreted by Massachusetts' highest court in *Kauders*, where the website does not use clickwrap, a court must carefully consider the totality of the circumstances, and "it will be *difficult* for the offeror to carry its burden to show that the user assented to

46

the terms." *Kauders*, 159 N.E.3d at 1050-51 (emphasis added). The *Kauders* court explained:

> This is particularly important regarding online services, where services may be provided without requiring compensation or contractual agreements, and the users may not be sophisticated commercial actors. Without an action comparable to the solemnity of physically signing a written contract, for example, we are concerned that such users may not be aware of the implications of their actions where agreement to terms is not expressly required.

*Id.* (citations omitted). This is a difference in the legal standard, not just a difference in the result based on the facts (as the district court concluded "could" be the explanation, 1-ER-13).

Decisions applying Massachusetts law under *Kauders* have enforced only clickwrap agreements or even more consumer-protective agreements, never a browsewrap agreement like on ticketmaster.com and livenation.com. *See Emmanuel v. Handy Techs., Inc.*, 992 F.3d 1, 8-9 (1st Cir. 2021) (clickwrap agreement where terms were displayed in part, and could be viewed in full by scrolling); *Immediato v. Postmates, Inc.*, No. 20-cv-12308-RGS, 2021 WL 828381, at *4 (D. Mass. Mar. 4, 2021) (clickwrap agreement where plaintiffs "could not complete the sign-up process to register as couriers without clicking on a link which opened the Fleet Agreement"); *Archer v. GrubHub, Inc.*, No. 1984CV03277BLS1, 2021 WL 832132, at *5 (Mass. Super. Jan. 13, 2021) (electronic signature page that "explicitly references the Arbitration Agreement");

*Chong v. Northeastern Univ.*, No. 20-cv-10844-RGS, 2021 WL 1857341, at \*3 (D. Mass. May 10, 2021) (clickwrap agreement, but not enforced because textual notice was ambiguous).

The district court did not acknowledge *Kauders'* holding that "it will be difficult for the offeror to carry its burden to show that the user assented to the terms," 159 N.E.3d at 1051, in cases involving non-clickwrap websites. Instead, the court suggested that *Kauders* is consistent with California law because it "relies on the [older] *Ajemian* decision to outline a reasonableness standard that is ultimately based in California law." 1-ER-12 (citing *Ajemian v. Yahoo!, Inc.*, 83 Mass. App. Ct. 565, 574-75 (2013); *Specht v. Netscape Commc'ns Corp.*, 306 F.3d 17, 35 (2d Cir. 2002) (applying California law)). This misreads *Kauders*.

*Kauders* acknowledged that *Ajemian* set forth the "the proper framework for analyzing issues of online contract formation," but *Kauders* then explained that "[s]etting out these general fundamental contract principles is not, however, the difficult part of analysis." 159 N.E.3d at 1049. Rather, "[t]he trick here is to know how to apply these general principles to newer forms of contracting over the Internet." *Id.* (quotations omitted). *Kauders* thus broke new ground by explaining how to *apply* the "general fundamental contract principles" in *Ajemian* to the type of modified browsewap interfaces at issue in *Kauders* and here. *Ajemian* did not address such interfaces—the record was too undeveloped to determine what type

of interface was even at issue. *Ajemian*, 83 Mass. App. Ct. at 575 ("There is a complete failure of the record in this regard."). And *Kauders*, consistent with the First Circuit's decision in *Cullinane*, concluded that such interfaces are generally *insufficient* to support a finding of constructive notice.[13]

The district court did not cite any decisions applying Massachusetts law under *Kauders* or *Ajemian* that have enforced online agreements other than clickwrap or scrollwrap[14] agreements, or browsewrap-plus agreements where the terms of the agreement were automatically displayed to users in a scroll window. *See, e.g.*, *Okereke v. Uber Techs., Inc.*, No. 16-cv-12487-PBS, 2017 WL 6336080, at *6 (D. Mass. June 13, 2017) ("In the context of 'clickwrap' agreements, such as the one at issue here, Massachusetts courts have held that such contracts are enforceable only where the record established that the terms of the agreement were displayed, *at least in part,* on the user's computer screen and the user was required to signify his or her assent by *'clicking' 'I accept.'"*) (citation omitted; emphases in original).

---

[13]   *Bekele v. Lyft, Inc.*, which noted in passing that "*Cullinane* did not 'substantial[ly] change' the applicable law," does not alter this conclusion because *Cullinane*, like *Kauders*, applied existing rules in new ways to new fact patterns. 918 F.3d 181, 187 (1st Cir. 2019) (cited at 1-ER-13). Moreover, in *Bekele*, the appellant "waived the contract formation issue by not raising it in his opening brief," so the First Circuit did not address the issue in detail, *id.* at 186, and any remarks about *Cullinane* are *dicta*.

[14]   Scrollwrap is even more conspicuous than clickwrap by forcing the customer to scroll through the terms before she can click an "I agree" box. 2-ER-90-92.

### 2. Defendants' Use Of Clickwrap On Other Websites Weighs Against Finding Constructive Notice Under Massachusetts Law

Under Massachusetts law, the fact that Defendants used clickwrap agreements in other contexts (*i.e.*, on other websites, for other purposes on the websites at issue, and after July 2020 on the Place Order screen of those websites)—but not for the Terms used during the period Ticket Purchasers bought tickets on ticketmaster.com and livenation.com—demonstrates lack of assent. *Kauders*, 159 N.E.3d at 1055 ("Clearly, Uber knows how to obtain clear assent to its terms. We therefore conclude that there was no reasonable manifestation of assent here."). The district court did not address this aspect of Massachusetts law.

### 3. The Contrast Between The Hyperlinks And The Surrounding Text Weighs Against Finding Constructive Notice Under Massachusetts Law

Finally, under Massachusetts law, the fact that ticketmaster.com and livenation.com displayed the hyperlinks to the Terms more prominently than the surrounding text demonstrates lack of constructive notice. *Kauders*, 159 N.E.3d at 1055 ("Uber claims this highlights the terms and conditions. A reasonable alternative interpretation is that it downplays the legal significance of creating the account."). In contrast, under California law as interpreted by the district court, this evidence is often cited to *support* a finding of constructive notice. 1-ER-15

(concluding the standard opacity of the hyperlinks, in comparison to the reduced opacity of the surrounding text, "sometimes serves to highlight the blue links").

The district court erroneously concluded that *Kauders* was confined to its facts in this respect. The court determined that the ruling in *Kauders* depended on the circumstance that "the connection between the creation of the account and the terms and conditions was also somewhat oddly displayed in the two-part format." 1-ER-13 (citing *Kauders*, 159 N.E.3d at 1052) (emphasis omitted); *see also Kauders*, 159 N.E.3d at 1052 ("The first part of the sentence, which informed the user, 'By creating an Uber account, you agree to the,' was far less prominently displayed than the words 'Terms & Conditions and Privacy Policy,' which followed. The second part of the sentence -- 'Terms & Conditions and Privacy Policy' -- was in a rectangular box and in boldface font."). But other courts applying *Kauders* have not limited it to interfaces involving a "two-part format." *See, e.g.*, *Chong*, 2021 WL 1857341, at *3-4 (declining to enforce agreement; no discussion of "two-part" format); *Pryor v. Eastern Bank*, No. 1984CV03467BLS1, 2021 WL 3612495, at *9 (Mass. Sup. Ct. Mar. 3, 2021) (applying *Kauders* for general constructive notice standard; finding no assent).

In any event, even if *Kauders* could be restricted to websites that use a two-part format, the district court overlooked that ticketmaster.com and livenation.com do so as well insofar as they employ different text for the hyperlinks and textual

notices, which is inconspicuous under Massachusetts law. *Kauders*, 486 Mass. at 578. The evidence described above, including the affidavit of Dr. Andre, showed that this design choice made the textual notices (the text surrounding the hyperlinks) inconspicuous to users. Whether Defendants' design choices were similar to those in *Kauders* and thus defective for the same reasons was, at the very least, a factual dispute that should have been resolved by the jury.

## III. THE DISTRICT COURT ERRED IN RULING THAT THE PARTIES DELEGATED TO THE ARBITRATOR RATHER THAN THE COURT THE QUESTION WHETHER A CLAIM INVOLVES THE CONDITIONAL LICENSE

While the Terms contain a delegation clause assigning certain arbitrability questions to the arbitrator, 5-ER-812, the Terms also include a carve-out provision stating, "If a claim involves the conditional license granted to you as described in the Ownership of Content and Grant of Conditional License section (Section 3/[hyperlink]) above, either of us may file a lawsuit in a federal or state court located within Los Angeles County, California," 5-ER-812. The question is who—the court or the arbitrator—determines whether a claim "involves the conditional license." The Terms do not explicitly address that "who decides" question, and the confluence of the delegation clause and the carve-out could be construed to point to either answer. That falls short of what is necessary to hold that the decision is for the arbitrator, and the district court erred in ruling to the contrary.

52

"Courts should not assume that the parties agreed to arbitrate arbitrability unless there is 'clea[r] and unmistakabl[e]' evidence that they did so." *First Options Chicago*, 514 U.S. at 944 (quoting *AT&T Techs., Inc. v. Commc'ns Workers*, 475 U.S. 643, 649 (1986)). This is a "heightened standard." *Rent-a-Center, West, Inc. v. Jackson*, 561 U.S. 63, 69 n.1 (2010); *see also Ajamian v. CantorCO2e, L.P.*, 203 Cal. App. 4th 771, 784 (Cal. App. 1st Dist. 2012) (party claiming delegation of arbitrability question to arbitrator bears a "heavy" burden).

We acknowledge that a decision by a panel of this Court in *Oracle Am., Inc. v. Myriad Grp. A.G.*, 724 F.3d 1069 (9th Cir. 2013) (not discussed by the district court below), rejected this argument. In *Oracle*, the contract contained an arbitration provision, a carve-out of certain claims from arbitration, and an incorporation of UNCITRAL rules including the rule assigning arbitrability questions to the arbitrator. *Id.* at 1075-76. *Oracle* held: "Oracle's argument conflates the scope of the arbitration clause, *i.e.*, which claims fall within the carve-out provision, with the question of *who* decides arbitrability. The decision that a claim relates to intellectual property rights or compliance with the TCK License constitutes an arbitrability determination, which the parties have clearly and unmistakably delegated to the arbitrator by incorporating the UNCITRAL rules." *Id.* at 1076 (emphasis in original).

Although *Oracle* binds the instant panel, other federal courts of appeals and state courts of last resort have come to the opposite conclusion. *See, e.g.*, *Archer & White Sales, Inc. v. Henry Schein, Inc.*, 935 F.3d 274, 282 (5th Cir. 2019) ("Given th[e] carveout," there was no "clear and unmistakable intent to delegate arbitrability."), *cert dismissed*, 141 S. Ct. 656 (2021); *NASDAQ OMX Grp., Inc. v. UBS Secs. Inc.*, 770 F.3d 1010, 1032 (2d Cir. 2014) (provision "carves out certain issues from arbitration, a circumstance that thus delays application of AAA rules until a decision is made as to whether a question does or does not fall within the intended scope of arbitration, in short, until arbitrability is decided"); *James & Jackson, LLC v. Willie Gary, LLC*, 906 A.2d 76, 81 (Del. 2006) (similar; expressly disagreed with by *Oracle*, 724 F.3d at 1076). Accordingly, Ticket Purchasers respectfully preserve their argument for possible review by this Court *en banc* or the Supreme Court.

## CONCLUSION

The district court's order dismissing Ticket Purchasers' Amended Complaint should be vacated.

DATED: February 7, 2022          Respectfully submitted,


                                 By: */s/ Sanford I. Weisburst*
                                     Sanford I. Weisburst
                                     QUINN EMANUEL URQUHART
                                       & SULLIVAN, LLP
                                     51 Madison Ave., 22nd Floor
                                     New York, NY 10010
                                     (212) 849-7000
                                     sandyweisburst@quinnemanuel.com

                                     Kevin Y. Teruya
                                     Adam B. Wolfson
                                     William R. Sears
                                     QUINN EMANUEL URQUHART
                                       & SULLIVAN, LLP
                                     865 S. Figueroa St., 10th Floor
                                     Los Angeles, CA 90017
                                     (213) 443-3000

                                     Warren D. Postman
                                     Albert Y. Pak
                                     KELLER LENKNER LLC
                                     1100 Vermont Ave., N.W.
                                     12th Floor
                                     Washington, D.C. 20005
                                     (202) 918-1123

## <u>REQUEST FOR ORAL ARGUMENT</u>

Plaintiffs-Appellants respectfully request that the Court hear oral argument

in this case.


 */s/ Sanford I. Weisburst*                    February 7, 2022
*Attorney for Plaintiffs-Appellants*                    Date

## <u>STATEMENT OF RELATED CASES</u>

Pursuant to Circuit Rule 28-2.6, Plaintiffs-Appellants state that they are not aware of any related cases pending in this Court.


 */s/ Sanford I. Weisburst*           February 7, 2022
*Attorney for Plaintiffs-Appellants*           Date

## <u>CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME</u>

Pursuant to Fed. R. App. P. 32(a)(7)(C) and Circuit Rule 32-1, the attached opening brief is proportionately spaced, has a typeface of 14 points or more and contains 11,063 words.


<u>/s/ Sanford I. Weisburst</u>                         <u>February 7, 2022</u>
*Attorney for Plaintiffs-Appellants*                    Date

58

## <u>CERTIFICATE OF SERVICE</u>

I, Sanford I. Weisburst, a member of the Bar of this Court, hereby certify that on February 7, 2022, I electronically filed the foregoing "Opening Brief of Plaintiffs-Appellants" with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

  <u>/s/ Sanford I. Weisburst</u>         <u>February 7, 2022</u>
*Attorney for Plaintiffs-Appellants*            Date