**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| MITCH OBERSTEIN; GARY MATTY; SOPHIE BURKE, on behalf of themselves and all those similarly situated, | No. 21-56200 |
| | D.C. No. 2:20-cv-03888-GW-GJS |
| *Plaintiffs-Appellants,* | |
| | OPINION |
| v. | |
| LIVE NATION ENTERTAINMENT, INC.; TICKETMASTER LLC, | |
| *Defendants-Appellees.* | |

Appeal from the United States District Court
for the Central District of California
George H. Wu, District Judge, Presiding

Argued and Submitted September 19, 2022
Pasadena, California

Filed February 13, 2023

Before:  Danny J. Boggs,[*] Kim McLane Wardlaw, and
Sandra S. Ikuta, Circuit Judges.

Opinion by Judge Boggs

## SUMMARY[**]

### Arbitration

The panel affirmed the district court's order compelling
arbitration pursuant to the Federal Arbitration Act and
dismissing an antitrust action brought under the Sherman
Act by a putative class of ticket purchasers against appellees
Ticketmaster LLC and Live Nation Entertainment, Inc.

The ticket purchasers claimed that they paid supra-
competitive fees for tickets on appellees'
websites. Appellees moved to compel arbitration on the
basis of their websites' terms of use, which included an
arbitration provision. The district court granted the motion,
holding that the terms of use constituted a valid agreement
between the parties and that the requirements for mutual
assent were met.

The panel held that the terms of use were not invalid
under California law for failure to properly identify
appellees as parties to the agreement. The panel concluded

---

[*] The Honorable Danny J. Boggs, United States Circuit Judge for the
U.S. Court of Appeals for the Sixth Circuit, sitting by designation.

[**] This summary constitutes no part of the opinion of the court. It has
been prepared by court staff for the convenience of the reader.

that it was possible for a reasonable user to identify the parties to the contract based on the terms' repeated references to appellees' common trade names, express references to "Live Nation Entertainment, Inc.," and available avenues that would enable a reasonable user to identify Ticketmaster's full legal name.

The panel further held that appellees did not fail to provide constructive notice of the terms of use. The panel concluded that the online terms fell between the extremes of a "clickwrap" agreement, in which a website presents users with specified contractual terms on a pop-up screen and users must check a box explicitly stating "I agree" in order to proceed, and a "browsewrap" agreement, in which a website offers terms that are displayed only through a hyperlink and the user supposedly manifests assent to those terms simply by continuing to use the website. Therefore, a fact-intensive inquiry, analyzing mutual assent under an objective-reasonableness standard, was required.

The panel concluded that it need not engage in a detailed choice-of-law analysis between California and Massachusetts law because the two states' laws apply substantially similar rules. The panel held that an enforceable agreement may be found where (1) a website provides reasonably conspicuous notice of the terms to which the consumer will be bound; and (2) the consumer takes some action, such as clicking a button or checking a box, that unambiguously manifests his or her assent to those terms. The panel held that appellees' terms of use met this standard. Appellees' website contained features sufficient to provide reasonably conspicuous notice of the terms because the terms were marked in bright blue font and distinguished from the rest of the text, and the notices were located directly on top of or below the action button at each

of three independent stages that a user was required to complete before purchasing tickets. And the notices at issue explicitly alerted the user that by creating an account, signing in, or purchasing a ticket, and proceeding to the next page, the user "agrees to our Terms of Use." Finally, the panel held the district court did not err in deciding the constructive notice issue as a matter of law.

## COUNSEL

Sanford I. Weisburst (argued), Quinn Emanuel Urquhart & Sullivan LLP, New York, New York; Kevin Y. Teruya, Adam B. Wolfson, William R. Sears IV, and Shon Morgan, Quinn Emanuel Urquhart & Sullivan LLP, Los Angeles, California; Warren D. Postman and Albert Y. Pak, Keller Postman LLC, Washington, D.C.; Frederick A. Lorig, Frederick Lorig APC, Rolling Hills, California; for Plaintiffs-Appellants.

Sadik H. Huseny (argued), Timothy L. O'Mara, Daniel M. Wall, Andrew M. Gass, Kirsten M. Ferguson, Alicia R. Jovais, and Nicholas Rosellini, Latham & Watkins LLP, San Francisco, California, for Defendants-Appellees.

**OPINION**

BOGGS, Circuit Judge:

This appeal arises from a motion to dismiss in favor of compelled arbitration. Plaintiffs-Appellants represent a putative class of ticket purchasers ("Ticket Purchasers") against Defendants-Appellees Ticketmaster LLC and Live Nation Entertainment, Inc. ("Appellees"). Ticket Purchasers sued Appellees in federal district court alleging anticompetitive practices in violation of the Sherman Act. Appellees moved to compel arbitration on the basis of their websites' terms of use ("Terms"). The court granted the motion and dismissed the case, holding that the Terms constituted a valid agreement between the parties and that the requirements for mutual assent were met. For the following reasons, we affirm.

I

Plaintiffs-Appellants Mitch Oberstein, Sophie Burke, and Gary Matty represent the putative class of Ticket Purchasers who claim they paid supra-competitive fees for tickets on Appellees' websites. After Ticket Purchasers brought suit in federal district court, Appellees moved to compel arbitration on the basis of a provision contained in the Terms on their respective websites. The district court held that the Terms constituted a valid agreement and that Ticket Purchasers had assented to the Terms, which included a binding arbitration provision. As a result, the court granted Appellees' motion to dismiss.

On appeal, Ticket Purchasers claim that the district court erred in ordering dismissal. They contest the validity of the Terms, and, thus, the arbitration agreement, on a number of

fronts. First, they argue that the Terms are invalid for failing to properly identify Appellees as parties to the agreement. Second, they argue that Appellees failed to provide constructive notice of the Terms under both California and Massachusetts law. Alternatively, they claim that, even if the district court did not err in finding constructive notice of the Terms under California law, it erred in failing to analyze constructive notice under allegedly more stringent Massachusetts law as to Plaintiff-Appellant Burke, who is a citizen of that state. Finally, they argue that the district court erred in deciding the constructive-notice issue as a matter of law. [1]

## II

We have jurisdiction over this appeal pursuant to 28 U.S.C. § 1291.

The Federal Arbitration Act (FAA) requires courts to compel arbitration of claims covered by an enforceable arbitration agreement. 9 U.S.C. § 3. The FAA limits the courts' role to "determining whether a valid arbitration agreement exists and, if so, whether the agreement encompasses the dispute at issue." *Lifescan, Inc. v. Premier Diabetic Servs., Inc.*, 363 F.3d 1010, 1012 (9th Cir. 2004). "In determining whether the parties have agreed to arbitrate a particular dispute, federal courts apply state-law principles

---

[1] Ticket Purchasers advance another argument concerning the scope of the arbitration provision, but acknowledge that the issue has already been decided against them by this court. *See Oracle Am., Inc. v. Myriad Grp. A.G.*, 724 F.3d 1069 (9th Cir. 2013) (holding that a carve-out provision excepting certain claims from an arbitration provision does not abridge an otherwise clear and unmistakable delegation of arbitrability questions to the arbitrator). They seek to preserve this argument for en banc or Supreme Court review.

of contract formation." *Berman v. Freedom Fin. Network, LLC*, 30 F.4th 849, 855 (9th Cir. 2022) (citing *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995)). Upon being satisfied of the existence of a valid arbitration agreement, the court must order the parties to proceed to arbitration in accordance with the terms of the agreement. 9 U.S.C. § 4. We review de novo a district court's decision to grant a motion to compel arbitration. *Quackenbush v. Allstate Ins. Co.*, 121 F.3d 1372, 1380 (9th Cir. 1997).

A

Ticket Purchasers argue that the Terms are invalid for failure to properly identify Appellees as parties to the agreement. Both parties agree that California law governs the issue. In applying California law, we are bound by the decisions of the California Supreme Court. *Norcia v. Samsung Telecomms. Am., LLC*, 845 F.3d 1279, 1284 (9th Cir. 2017). If the California Supreme Court has not directly addressed the issues before us, we will generally abide by the decision of an intermediate state court, unless we are convinced that the California Supreme Court would reject it. *Ibid.*

Under California law, "[i]t is essential to the existence of a contract that there should be: (1) [p]arties capable of contracting; (2) [t]heir consent; (3) [a] lawful object; and, (4) [a] sufficient cause or consideration." Cal. Civ. Code § 1550. Furthermore, for a contract to be binding, it is necessary "not only that the parties to the contract *exist*, but that it is possible to identify them." *Jackson v. Grant*, 890 F.2d 118, 121 (9th Cir. 1989) (citing Cal. Civ. Code § 1558).

Upon clicking the "Terms of Use" hyperlink, a user is directed to a page containing the Terms. The first line reads: "Welcome! The following are the terms of use ('Terms') that

govern your use of Live Nation and Ticketmaster's sites and mobile applications . . . and your purchase, possession, or use of any Live Nation or Ticketmaster tickets, products, or services." The Terms reference Appellees' common trade names—"Live Nation" and "Ticketmaster"—nine and seven times, respectively. The webpages where the Terms appear are emblazoned with Appellees' logos.

The full legal name "Live Nation Entertainment, Inc." is referenced in the arbitration provision: "To begin an arbitration proceeding, you must send a letter requesting arbitration and describing your claim to: Live Nation Entertainment, Inc., 9348 Civic Center Drive, Beverly Hills, CA 90210, Attn: General Counsel." "Live Nation Entertainment, Inc." is also identified as the relevant contact for "questions, comments or complaints." The full legal name "Ticketmaster LLC" does not appear in the Terms, but a user could find it by clicking on the "Purchase Policy" link contained in the second paragraph of the agreement.[2] A user could find further information concerning Appellees' corporate entities by following links located at the bottom of the Terms webpage.

California law does not require that corporate parties to a contract use their full legal names. California law requires only that it be possible for a reasonable user to identify the parties to the contract. *See* Cal. Civ. Code § 1558. Here, the Terms' repeated references to Appellees' common trade names, express references to "Live Nation Entertainment, Inc.," and available avenues that would enable a reasonable

---

[2] In a section of the purchase policy titled "Who You Are Buying From," the policy informs users that "Ticketmaster LLC" handles the sale of tickets purchased in the United States.

user to identify Ticketmaster's full legal name more than clear that low bar.

As the district court correctly noted, the facts in the cases that Ticket Purchasers cite to invalidate the Terms at issue do not come close to comparing with the facts before us. Ticket Purchasers first rely on *Flores v. Nature's Best Distribution, LLC*, 212 Cal. Rptr. 3d 284 (Ct. App. 2016). In *Flores*, the court refused to enforce an arbitration provision contained in an employment contract between an "employee" and the "Company." *Flores*, 212 Cal. Rptr. 3d at 287. The contract consistently used those generic words, without defining either one. *Ibid.* A carve-out provision excepted from the arbitration provision claims that were covered in a separate "[a]greement between Nature's Best and Teamster's Local 692." *Ibid.* Ticket Purchasers point to that contract's lone reference to "Nature's Best" as support for a party-identification standard that would hold all references to common names to be insufficient.

Ticket Purchasers misread *Flores*. The *Flores* court did not invalidate the agreement at issue because it occasionally used a company's common trade name, but rather because it repeatedly used, without defining, the generic terms "employee" and "Company." *Id.* at 290–91. Because the single reference to "Nature's Best" appeared only in an entirely separate and unrelated arbitration agreement, the court did not even consider the issue of whether use of a common trade name would have been sufficient to identify Nature's Best as a party to the agreement. *See ibid*.

Ticket Purchasers' reliance on *Bouarich v. Comerica Management Co.*, 2021 WL 1782995 (Cal. Ct. App. May 5, 2021) is similarly misplaced. The court in *Bouarich* invalidated the arbitration agreement at issue because it

"repeatedly refer[red] to 'the parties' . . . but d[id] not define 'parties.'" *Bouarich*, 2021 WL 1782995, at *5. Citing *Flores*, the court recognized that the agreement failed to give Bouarich any notice of who she was supposed to arbitrate her disputes with, emphasizing that "Comerica's name appear[ed] nowhere in the agreement." *Ibid.*

In invalidating those agreements, the courts in *Flores* and *Bouarich* did not take issue with the use of common trade names. They had no occasion to. The agreements were deemed invalid because of the consistent use of generic, undefined terms and the companies' failure to include any information that would make identification of the relevant parties possible. *See Flores*, 212 Cal. Rptr. 3d at 290–91; *Bouarich*, 2021 WL 1782995, at *5. Ticket Purchasers' attempt to compare the general identifiers at issue in *Flores* and *Bouarich* ("Company"; "parties") with the ones used in the Terms here ("us"; "we"; "our") is unconvincing because, unlike the agreements in those cases, the Terms here repeatedly indicate which entities the general terms refer to: Live Nation and Ticketmaster.[3]

Even if California law required the recitation of a corporate entity's full legal name, "Live Nation Entertainment, Inc." is explicitly referenced multiple times in the Terms, including in the arbitration clause itself. Ticket Purchasers concede as much, but claim that the references to the legal entity are only "ministerial," reflecting Live Nation

---

[3] The use of these terms ("us," "we," and "ours") along with statements that the Terms govern any "use of Live Nation and Ticketmaster's sites" and all purchases of "Live Nation or Ticketmaster tickets, products, or services," forecloses Ticket Purchasers' argument that the Terms convey that there is only one ticket-selling entity.

Entertainment, Inc.'s status as a recipient of notices and questions rather than as a party to the agreement.

It is difficult to imagine who would be a party to the arbitration agreement if not, at the very least, the entity specifically listed as the addressee for the initiation of arbitration disputes. While it is true that, near the end of the Terms, there is language stating that "questions, comments or complaints regarding these Terms" are to be referred to "Live Nation Entertainment, Inc.," that reference bolsters rather than diminishes the already clear identification of Live Nation Entertainment, Inc. as an interested party concerning arbitration-related disputes.

Ticket Purchasers further claim that "the fact that a different entity—Live Nation Worldwide, Inc.—owns the livenation.com domain name and operates the website" further supports the idea that Live Nation Entertainment, Inc. is a mere recipient of notices and questions. The Terms, however, "govern [the] use of Live Nation and Ticketmaster's sites and mobile applications . . . and [the] purchase, possession, or use of any Live Nation or Ticketmaster tickets, products, or services." The collective terminology ("we"; "us") used throughout the agreement can reasonably be understood as referring to any Live Nation or Ticketmaster ticket-selling entity operating under the "Live Nation Entertainment, Inc." banner. This would naturally include Ticketmaster LLC, the Ticketmaster entity responsible for selling tickets in the United States.

Ticket Purchasers effectively ask this court to impose a requirement that parties to an arbitration agreement identify themselves in the contractual document by their full legal names. However, they fail to produce any authority, mandatory or persuasive, demanding as much. While the

cases Ticket Purchasers cite establish a floor for what level of identification is insufficient, the agreements at issue rise stories above it.

Between the Terms' repeated references to Appellees' common trade names, the express references to "Live Nation Entertainment, Inc.," and the fact that identification of "Ticketmaster LLC" was not unduly difficult, it was reasonably possible for Ticket Purchasers to identify Appellees as parties to the agreement. Because that is all that California law requires, *see* Cal Civ. Code § 1558, we affirm the district court's holding that the Terms adequately identified Appellees as parties to the agreement.

B

Ticket Purchasers next argue that Appellees failed to provide constructive notice of the Terms under both California and Massachusetts law. Concerning the latter, they contend that the district court erred in failing to analyze Plaintiff-Appellant Burke's claims under Massachusetts's more stringent standard. Ticket Purchasers finally argue that the district court erred in deciding the constructive-notice issue as a matter of law.

1.  California vs. Massachusetts Law

To form a contract under California or Massachusetts law, there must be actual or constructive notice of the agreement and the parties must manifest mutual assent. *Berman*, 30 F.4th at 855; *see Kauders v. Uber Techs. Inc.*, 159 N.E.3d 1033, 1049 (Mass. 2021) ("[F]or there to be an enforceable contract, there must be both reasonable notice of the terms and a reasonable manifestation of assent to those terms." (citing *Specht v. Netscape Commc'ns Corp.*, 306 F.3d 17, 35 (2d Cir. 2022))). With the rapid growth of the

internet and e-commerce, courts have been required to apply these traditional contract principles to novel forms of agreement. *See Berman*, 30 F.4th at 855–56 ("[E]lemental principles of contract formation apply with equal force to contracts formed online."); *Kauders*, 159 N.E.3d at 1048 ("The touchscreens of Internet contract law must reflect the touchstones of regular contract law.").

The first and "most straightforward application of these principles . . . involves so-called 'clickwrap' agreements, in which a website presents users with specified contractual terms on a pop-up screen and users must check a box explicitly stating 'I agree' in order to proceed." *Berman*, 30 F.4th at 856 (citing *Nguyen v. Barnes & Noble, Inc.*, 763 F.3d 1171, 1175–76 (9th Cir. 2014)). Courts routinely find clickwrap agreements enforceable. *Ibid.* (citing *Meyer v. Uber Techs., Inc.*, 868 F.3d 66, 75 (2d Cir. 2017)). "At the other end of the spectrum are so-called 'browsewrap' agreements, in which a website offers terms that are disclosed only through a hyperlink and the user supposedly manifests assent to those terms simply by continuing to use the website." *Ibid.* (citing *Nguyen*, 763 F.3d at 1176). Courts are generally reluctant to enforce such agreements because they often leave users "unaware that contractual terms were even offered, much less that continued use of the website will be deemed to manifest acceptance of those terms." *Ibid.* (citing *Nguyen*, 763 F.3d at 1178). When an online agreement falls between these two extremes, courts analyze mutual assent under an objective-reasonableness standard. *See id.* at 856–58 (conducting a fact-intensive inquiry to determine whether a non-clickwrap agreement met an objective standard of mutual assent); *Kauders*, 159 N.E.3d at 1049 (citing *Meyer*, 868 F.3d at 76) (same).

14    OBERSTEIN V. LIVE NATION ENTERTAINMENT, INC.

Ticket Purchasers rely primarily on *Kauders* for the proposition that Massachusetts law imposes a more stringent standard than California law on the issue of constructive notice. In *Kauders*, after a group of registered users brought suit against Uber, Uber sought to compel arbitration based on an agreement contained in its mobile application's terms of use. *Id.* at 1038–39. To determine whether the users had constructive notice of the agreement, the Massachusetts Supreme Judicial Court adopted the reasonableness test laid out in *Ajemian v. Yahoo!, Inc.*, 987 N.E.2d 604, 611–12 (Mass. App. Ct. 2013). *Kauders*, 159 N.E.3d at 1049 ("We conclude that [the *Ajemian*] test . . . is the proper framework for analyzing issues of online contract formation."). The two-part *Ajemian* test, requiring "[1] reasonable notice of the terms and [2] a reasonable manifestation of assent to those terms," was itself borrowed from *Specht*, a Second Circuit decision that applied California law. *See ibid.* (citing *Ajemian*, 987 N.E.2d at 611–12) (quoting *Specht*, 306 F.3d at 35).

Ticket Purchasers claim that *Kauders* did not merely apply the California-based framework to a new set of facts, but rather articulated a new standard that, absent clickwrap, it will be difficult for the offeror to carry its burden to show that the user assented to the terms.

*Kauders* did not break any new legal ground. Rather, there, the Massachusetts Supreme Judicial Court engaged in the same "fact-intensive inquiry" as have other courts, including this one, that apply the reasonableness test. *Kauders* 159 N.E.3d at 1050–51 (citing *Meyer*, 868 F.3d at 76); *cf. Berman*, 30 F.4th at 855–56 (finding that "New York and California apply substantially similar rules for determining whether the parties have mutually assented to a

contract term" before conducting a fact-intensive inquiry) (cleaned up).

That "it will be difficult for the offeror to carry its burden" in cases involving non-clickwrap websites does not reflect a novel standard, but rather the same sort of common-sense factual conclusion made by courts applying the reasonableness framework to the spectrum of online agreements. *See Kauders*, 159 N.E.3d at 1051. Thus, while clickwrap represents "the clearest manifestations of assent" and is "certainly the easiest method of ensuring the terms are agreed to," it is "not necessarily required." *Id.* at 1050 (internal quotations marks omitted) (quoting *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 237–38 (2d Cir. 2016)). And where clickwrap is not employed, "courts must again carefully consider the totality of the circumstances, and assent may be inferred from other action the users have taken." *Id.* at 1051.

In *Berman*, the Ninth Circuit engaged in the same sort of fact-intensive inquiry, noting that the webpage agreement at issue did not fall neatly into either the clickwrap or browsewrap categories. The *Berman* court employed a materially indistinguishable two-part test that is used by both California and New York courts, which requires (1) reasonably conspicuous notice and (2) an unambiguous manifestation of assent. *Compare Berman*, 30 F.4th at 856 (citing *Meyer*, 868 F.3d at 75), *with Kauders*, 159 N.E.3d at 1049 (requiring "reasonable notice of the terms and a reasonable manifestation of assent to those terms"). After pointing out that clickwrap agreements are routinely found enforceable and represent "[t]he most straightforward application of these principles," the court went on to analyze the non-clickwrap agreement there under the objective, totality-of-the-circumstances standard. *Berman*, 30 F.4th at

856–58 (ultimately finding both a lack of reasonable constructive notice and of unambiguous manifestation of assent).

Ticket Purchasers rely on a set of unpublished California district court decisions holding that a First Circuit decision, *Cullinane v. Uber Technologies, Inc.*, 893 F.3d 53 (1st Cir. 2018), sets a higher standard than the standard set under California law. According to Ticket Purchasers, *Cullinane* is based on Massachusetts law, and therefore, Ticket Purchasers allege, Massachusetts law sets a standard higher than California law. We disagree. The district court decisions—*Lee v. Postmates Inc.*, No. 18-cv-03421-JCS, 2018 WL 4961802, at \*4 (N.D. Cal. Oct. 15, 2018), and *West v. Uber Technologies*, No. 18-cv-3001-PSG-GJS, 2018 WL 5848903, at \*4 (C.D. Cal. Sept. 5, 2018)—did not state that *Cullinane* departed from Ninth Circuit reasoning in applying the two-part reasonableness test. While those cases took issue with *Cullinane*'s application of the prevailing legal framework, the framework itself remained the same. *Cullinane*, 893 F.3d at 61–62 ("[W]e apply the principles stated in *Ajemian*."); *see also Sellers v. JustAnswer LLC*, 289 Cal. Rptr. 3d 1, 24 (2021) (acknowledging *Cullinane*'s anomalous result but noting that the court there "appl[ied] the same substantive law").[4] Thus, although some California district courts consider *Cullinane* a deviation from existing law, the result there can be explained by the fact that "the inquiry has always been context- and fact-specific." *Bekele v. Lyft, Inc.*, 918 F.3d 181, 187 (1st Cir. 2019); *see also Meyer*, 868 F.3d at 76 ("[R]easonable minds could disagree

---

[4] For its part, the First Circuit, in *Bekele v. Lyft, Inc.*, 918 F.3d 181, 187 (1st Cir. 2019), noted that "*Cullinane* did not substantial[ly] change the applicable law.

regarding the sufficiency of notice." (citing *Nicosia*, 834 F.3d at 237)).

In expressly adopting the *Ajemian* test, the Massachusetts Supreme Judicial Court aligned Massachusetts law with Second Circuit precedent, which, in turn, was based on California law. While the fact-intensive inquiry required under the two-part reasonableness test may lead to different results as courts encounter novel fact patterns, the general legal framework remains unchanged. As California and Massachusetts law apply "substantially similar rules," we need not engage in a detailed choice-of-law analysis. *See Berman*, 30 F.4th at 855 (first quoting *Meyer*, 868 F.3d at 74; and then citing *Nguyen*, 763 F.3d at 1175).

2. Constructive Notice

As discussed above, an enforceable agreement may be found where "(1) the website provides reasonably conspicuous notice of the terms to which the consumer will be bound; and (2) the consumer takes some action, such as clicking a button or checking a box, that unambiguously manifests his or her assent to those terms." *Id.* at 856 (citing *Meyers*, 868 F.3d at 75); *see also Kauders*, 159 N.E.3d at 1049.

To satisfy the first part of the test, "a notice must be displayed in a font size and format such that the court can fairly assume that a reasonably prudent Internet user would have seen it." *Berman*, 30 F.4th at 856 (first citing *Specht*, 306 F.3d at 30; and then citing *Nguyen*, 763 F.3d at 1173). This court looks to "the conspicuousness and placement of the 'Terms of Use' hyperlink, other notices given to users of the terms of use, and the website's general design" in determining "whether a reasonably prudent user would have

inquiry notice of a browsewrap agreement." *Nguyen*, 763 F.3d at 1177.

The second part of the test—whether the user takes some action that unambiguously manifests assent—is relatively straightforward. "A user's click of a button can be construed as an unambiguous manifestation of assent only if the user is explicitly advised that the act of clicking will constitute assent to the terms and conditions of an agreement." *Berman*, 30 F.4th at 857 (citing *Specht*, 306 F.3d at 29–30). "[T]he notice must explicitly notify a user of the legal significance of the action she must take to enter into a contractual agreement." *Id.* at 858.

Appellees' Terms are not pure clickwrap because they do not, upon some user action, request that users click on a box to confirm agreement before proceeding. Nor are they pure browsewrap, as they are not hidden in links located at the bottom of webpages. Rather, they lie somewhere in between. For the following reasons, we conclude that Appellees did enough to provide constructive notice of the Terms.

At three independent stages—when creating an account, signing into an account, and completing a purchase—Ticketmaster and Live Nation webpage users are presented with a confirmation button above which text informs the user that, by clicking on this button, "you agree to our Terms of Use." To sign into an account, for example, a user must click the "Sign in" button, directly above which is language stating: "By continuing past this page, you agree to the Terms of Use." Similarly, to place an order, a user must click on the "Place Order" button, directly above which is language stating: "By continuing past this page and clicking 'Place Order', you agree to our Terms of Use." The "Terms

of Use" hyperlink is written in bright blue font, distinguishing it from the surrounding text. By clicking on the blue "Terms of Use" text, users are transferred to a separate webpage containing the Terms, which contains an arbitration provision.

We agree with the district court that a reasonable user would have seen the notice and been able to locate the Terms via hyperlink. Appellees' notice is conspicuously displayed directly above or below the action button at each of three independent stages that a user must complete before purchasing tickets. The language "By continuing past this page and clicking [the button], you agree to our Terms of Use" clearly denotes "that continued use will act as a manifestation of the user's intent to be bound." *See Nguyen*, 763 F.3d at 1177. And, crucially, the "Terms of Use" hyperlink is conspicuously distinguished from the surrounding text in bright blue font, making its presence readily apparent. Based on these features, this court and several others have held that these very same Ticketmaster and Live Nation websites have designs that provide constructive notice of the Terms. *See, e.g.*, *Dickey v. Ticketmaster LLC*, 2019 WL 9096443 (C.D. Cal. Mar. 12, 2019); *Nevarez v. Forty Niners Football Co.*, 2017 WL 3492110 (N.D. Cal. Aug. 15, 2017).

Ticket Purchasers argue that none of these cases is binding and point us to two recent cases, *Berman* and *Sellers*, that invalidated online agreements on grounds of lack of constructive notice. Applying the standard two-part test, *Berman* found the hybrid agreement at issue to be invalid for failing to include features that would alert a reasonable user to its existence. *Berman*, 30 F.4th at 857. In conducting the fact-intensive inquiry, the court emphasized that the text disclosing the existence of the terms was printed in an

inconspicuous tiny gray font and found that the mere underlining of hyperlinked terms and conditions was "insufficient to alert a reasonably prudent user that a clickable link exists." *Ibid.* It noted, however, that "[c]ustomary design elements denoting the existence of a hyperlink include the use of a contrasting font color (typically blue) . . . which can alert a user that the particular text differs from other plain text in that it provides a clickable pathway to another webpage." *Ibid.*

In *Sellers*, a California appellate court similarly found a hybrid agreement invalid because of the enforcing party's failure to provide reasonably conspicuous notice of the agreement. There, too, the court emphasized the insufficiency of merely underlining a hyperlink to an agreement, stating that it was "not set apart in any other way that may draw the attention of the consumer, such as with blue text or capital letters." *Sellers*, 289 Cal. Rptr. 3d at 29. The court also considered "the context of the transaction" and the placement of the notice. *Ibid.* (citing *Meyer*, 868 F.3d at 80). Unlike a user who signs up for an account and "clearly contemplate[s] some sort of continuing relationship," the users of the website at issue were merely attempting to start a free trial, making it less likely that they would "scrutin[ize] the page for small text outside the payment box or at the bottom of the screen linking them to 26 pages of contractual terms." *Ibid.*

Rather than support the invalidation of the Terms at issue, the principles laid out in *Berman* and *Sellers* support the district court's holding that Appellees' websites contained features sufficient to provide reasonably conspicuous notice of the Terms. In contrast with the agreements invalidated in *Berman* and *Sellers*, the Terms here were marked in bright blue font and distinguished from

the rest of the text. The notices were not buried on the bottom of the webpage or placed outside the action box, but rather were located directly on top of or below each action button. And, in contrast with the noncommittal free trial offered in *Sellers*, the context of this transaction, requiring a full registration process, reflected the contemplation of "some sort of continuing relationship" that would have put users on notice for a link to the terms of that continuing relationship. *See ibid.*

We find it worth emphasizing that while Appellees' Terms meet the reasonably conspicuous standard, this hybrid form of agreement is not without its risks and invites second-guessing. *See Berman*, 30 F.4th at 868 n.4 (Baker, J., concurring). To ensure that an online agreement passes muster, clickwrap is the safest choice. However, guided by the principles set forth by this court and other courts across this country, we hold that, under the undisputed facts here, the Appellees presented their Terms so as to be reasonably conspicuous to the average user.

The second part of the analysis—whether the user took some action that unambiguously manifested the user's assent to the agreement—is straightforward on these facts. Ticket Purchasers do not contest that the notices at issue explicitly alert the user that by creating an account, signing in, or purchasing a ticket, and proceeding to the next page, the user "agrees to our Terms of Use." As the *Berman* court emphasized, that is all that is required. *Id.* at 858 ("[The] notice defect could easily have been remedied by including language such as, 'By clicking the Continue >> button, you agree to the Terms & Conditions.'" (citing *Meyer*, 868 F.3d at 78–80)).

Because the Ticketmaster and Live Nation websites provided reasonably conspicuous notice of the Terms to which Ticket Purchasers unambiguously manifested assent, we hold that the district court did not err in determining that the Terms, including the arbitration provision, were valid and binding.

3.  Constructive Notice as a Matter of Law

As a final matter, Ticket Purchasers argue that the district judge erred in finding constructive notice as a matter of law. Specifically, they contend that the district court failed to consider Ticket Purchasers' discovery evidence and erroneously relied on Appellees' screenshots, which they claim did not accurately capture the Ticket Purchasers' experience. Citing the Federal Arbitration Act, 9 U.S.C. § 4, they claim that this case should have gone to trial on the issue of constructive notice.

In response to a motion to compel arbitration the district court must "hear the parties." *Hansen v. LMB Mortg. Servs., Inc.*, 1 F.4th 667, 672 (9th Cir. 2021) (quoting 9 U.S.C. § 4). A district court considering such a motion must "give to the opposing party the benefit of all reasonable doubts and inferences that may arise." *Three Valleys Mun. Water Dist. v. E.F. Hutton & Co.*, 925 F.2d 1136, 1141 (9th Cir. 1991) (quoting *Par–Knit Mills, Inc. v. Stockbridge Fabrics Co.*, 636 F.2d 51, 54 (3d Cir. 1980)). "If the court is satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement." *Hansen*, 1 F.4th at 672 (internal quotation marks omitted) (quoting 9 U.S.C. § 4). Although mutual assent is generally a question of fact, whether a certain set of facts is sufficient to establish

a contract is a question of law. *Long v. Provide Commerce, Inc.*, 245 Cal. Rptr. 3d 117, 123–24 (2016); *see also Sellers*, 289 Cal. Rptr. 3d at 23 ("Because the threshold issue of the existence of a contract is for the courts to decide, the issue of conspicuousness is typically characterized as a question of law."). Thus, where the authenticity of screenshots is not subject to factual dispute, courts may decide the issue as "a pure question of law." *Long*, 245 Cal. Rptr. 3d at 123–24.

The district court did not err in deciding the constructive notice issue as a matter of law. While Ticket Purchasers claim that the district court relied on incomplete excerpts of the webpages, there is no dispute that the webpages themselves contained the notices, that the notices linked to the Terms, and that the Terms contained the arbitration provision. The features of the webpages on which the district court based its holding—the color, placement, language, and repetition of the notices—are all features on which courts, including this one, have relied in determining constructive notice as a matter of law. *See, e.g.*, *Berman*, 30 F.4th at 858; *Nguyen*, 763 F.3d at 1180.

Ticket Purchasers also argue that the district court erroneously failed to consider their expert and deposition testimony. In doing so, they conflate what is necessarily a fact-intensive inquiry with the existence of a material factual dispute. Even assuming that the discovery testimony was as damning as Ticket Purchasers claim, it could not mitigate the uncontested existence of features that, by themselves, establish constructive notice as a matter of law. When uncontested features of a webpage meet the baseline requirements for constructive notice, additional evidence of subjective intent is not required for a court to determine that constructive notice exists. Because that is what happened

here, the district court did not err in finding that constructive notice was established as a matter of law.

**AFFIRMED.**